2011 UT App 355

Christopher LADD, Plaintiff
and Appellant,

v.

BOWERS TRUCKING, INC.; and/or the
Estate of Tyrone A. Granlund,
Defendants and Appellees.

No. 20100889–CA.

Court of Appeals of Utah.

Oct. 20, 2011.

S. Brook Millard, Draper, for Appellant.

Theodore E. Kanell and Daniel E. Young, Salt Lake City, for Appellees.

Before Judges DAVIS, THORNE, and ROTH.

## MEMORANDUM DECISION

DAVIS, Presiding Judge:

¶1 Christopher Ladd appeals the trial court's grant of summary judgment in favor of Bowers Trucking, Inc. and the Estate of Tyrone A. Granlund (collectively, Defendants). We affirm.

¶2 Ladd was the passenger in a pickup truck traveling eastbound on Interstate 80 between Wendover, Nevada, and Salt Lake City, Utah, at 4:00 a.m. on August 10, 2003. For unknown reasons, the driver of the pickup truck (Driver) lost control of the vehicle, causing the pickup to roll. It landed on its wheels partly in the passing lane of traffic and partly in the median. Multiple eyewit-nesses traveling in two separate vehicles were passed by the pickup minutes before the rollover accident occurred. The eyewitnesses pulled off to the side of the highway at the scene of the accident to see if they could help the rollover victims. They found the pickup empty and Driver on the ground, partially in the road, east of the pickup. Driver was semi-conscious, covered in blood, and slightly gasping for air. While the eyewitnesses were attempting to help Driver, a second accident occurred in which another vehicle on the highway clipped the pickup as it drove past. Then, as the eyewitnesses were still attempting to stabilize Driver, a semi-truck driven by Granlund, who worked for Bowers Trucking, collided with the pickup, hurling the pickup into the air and into one of the eyewitnesses and Driver, injuring the eyewitness and killing Driver. Granlund also died as a result of the accident.

¶3 Ladd suffered several substantial injuries including six brain contusions that resulted in short-term memory loss, a problem he continued to experience for at least six years after the accidents despite having received several weeks of cognitive therapy. Ladd had no memory of the accidents until four to six months later when he purportedly relived the accidents in a dream. In his dream, after the pickup stopped rolling, Ladd "cut himself out of his seatbelt, crawled across the driver seat and out of the vehicle," stood up, and, almost immediately upon standing up, was struck by the Bowers Trucking semi-truck driven by Granlund. Ladd dreamed that he then regained consciousness from the semi-truck accident somewhere in proximity to Driver, saw Driver's injuries, and ran in a "freaked out" panic until he collapsed in the median, where he was ultimately found by police. The dream contained only the rollover and semi-truck accidents, not the clipping accident.

¶4 Ladd sued Defendants for negligence.[1] In a deposition, Ladd described the details of

1. Defendants raised the statute of limitations as an affirmative defense in their answer to Ladd's complaint but neglected to pursue the defense in subsequent proceedings. *See generally Seale v. Gowans*, 923 P.2d 1361, 1363 (Utah 1996) (describing the statute of limitations as an affirma-tive defense and explaining that, "[a]s with any affirmative defense, defendants have the burden of proving every element necessary to establish that the statute of limitations bars [the plaintiff']s claim"). The automobile accidents in this case occurred in August 2003, and Ladd's complaint

his dream, explaining that his account of the accident is "actually [him] reliving [his] dream." He explained that prior to having this dream, he had a gap in memory in which he had no recollection of the accidents at all; he remembered events in the truck before the accident—i.e., making a cell phone call and lighting a cigarette—and he remembered waking up in the hospital after the accident.

¶ 5 Ladd's dream testimony conflicts with the eyewitnesses' and the responding Utah Highway Patrol trooper's statements. Although the eyewitnesses and the trooper could not recall seeing Ladd at the accident scene specifically, their statements indicate that Ladd was ejected during the rollover into the median and that he remained in the median until the emergency responders arrived. In granting summary judgment in favor of Defendants, the trial court ruled that Ladd's dream was inadmissible and concluded that there were no material facts in dispute. Additionally, the trial court stated that summary judgment was also warranted in light of Ladd's failure "to designate an expert witness regarding causation of damages ... [and that a]s such, [Ladd] cannot prove causation." Ladd appeals, arguing that the trial court erred in ruling that there were no issues of material fact in dispute based on an incorrect determination that Ladd's dream was inadmissible, that the trial court erred by weighing the evidence surrounding the semi-truck accident in its summary judgment determination, and that the trial court erred in ruling that Ladd was required to present expert testimony to prove medical causation.

¶ 6 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). In reviewing a motion for summary judgment, the trial court "consider[s] all of the facts presented, and every inference fairly arising therefrom in the light most favorable to [the nonmoving party]." *Morris v. Farnsworth Motel,* 123 Utah 289, 259 P.2d 297, 298–99 (1953).

¶ 7 Although Ladd is "entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture." *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962). To present an issue of material fact, the parties must submit admissible evidence. Ladd argues that "[u]nder Rule 601 of the Utah Rules of Evidence, [he] is presumed to be competent to testify," and that "[b]ased on that presumption, Ladd's testimony ... has shown the existence of a disputed issue of material fact, here whether he was involved in the accident with Defendants' vehicle." Defendants argue that Ladd's dream does not qualify as "personal knowledge" under rule 602 of the Utah Rules of Evidence and that, therefore, Ladd is incompetent to testify and there is no issue of material fact in dispute at summary judgment. Ladd counters that rule 602 of the Utah Rules of Evidence, which "requires that [a] witness have the opportunity and the capacity to perceive the events in question," *State v. Eldredge,* 773 P.2d 29, 33 (Utah 1989), is satisfied here because "Ladd was at the scene at the time the accident happened and as such had the opportunity to perceive the events in question." Ladd likens his situation to that discussed in *State v. Eldredge,* 773 P.2d 29 (Utah 1989), in which a child's testimony about sexual abuse satisfied rule 602's requirements because the child had "personal knowledge of the incidents of abuse" even though at times the child's "testimony was somewhat confused and contradictory," *id.* at 30, 33. Ladd argues that *Eldredge* stands for the proposition that rule 602 is not concerned with "the

was filed in October 2008. A four-year statute of limitations applies to negligence actions, *see Ellis v. Estate of Ellis,* 2007 UT 77, ¶ 30, 169 P.3d 441; *see also* Utah Code Ann. § 78B–2–307 (2008), but the limitations period can be tolled in situations where the plaintiff is mentally incompetent, *see* Utah Code Ann. § 78B–2–108; *Ellis,* 2007 UT 77, ¶¶ 30–36, 169 P.3d 441 (explaining that evidence of a plaintiff's severe brain injuries and sustained inability "to manage his [or her] busi-

ness affairs or estate, or to comprehend his [or her] legal rights or liabilities" is sufficient evidence of mental incapacity to preclude summary judgment on statute of limitations grounds in a negligence case (alterations in original) (internal quotation marks omitted)). We decline to address the application of the statute of limitations because the issue has not been presented on appeal.

quality of the memory but the opportunity and capacity to observe," and asserts that Ladd had both. Therefore, Ladd contends that the issue boils down to whether "the recovery of memory regardless of source [should be] considered personal knowledge [or] subject to exclusion under Utah Rule of Evidence 602."

¶ 8 We disagree. We do not believe Ladd's dream can properly be categorized as a "recovered memory." Rather, Ladd's memory is of the dream itself and the dream alone. Ladd clearly stated in his deposition that his account of the accidents is "actually [him] reliving [his] dream" and that, putting the dream aside, he otherwise had absolutely no recollection of the accidents. Ladd's complaint also admits his memory lapse, stating, "Based on his *limited memory of the accident,* [Ladd] may have been thrown from the vehicle." [2] (Emphasis added.) Rule 602, which is identical to rule 602 of the Federal Rules of Evidence, *see* Fed.R.Evid. 602; Utah R. Evid. 602 advisory committee's note,[3] requires that "all non-expert witnesses before testifying to a relevant fact must establish that he or she had an opportunity to perceive a relevant fact, actually perceived it, remembers perceiving it, and can communicate that perception." R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 355 (2010–11). Thus, "[a] lay witness is only competent to testify if foundation can be presented that the witness both perceived a relevant event and can recall the event." *Id.* at 356. Here, Ladd's admitted memory gap indicates that he lacked the capacity to "observe," even assuming he had the "opportunity" to do so by being physically present at the scene. *Cf. United States v. Lanci,* 669 F.2d 391, 394 (6th Cir.1982) (ex-

cluding testimony from a lay witness for lack of personal knowledge because the witness's testimony was based on an assumption—that he " 'imagine[d]' [the defendant's] fingerprints appeared on the FBI documents because of [the defendant's] curiosity about the documents" but that he otherwise "didn't know whether [the defendant actually] 'read them ... or glanced through them or what' " (first alteration in original)). Ladd's attempt to fill his memory gap with the contents of a dream he experienced several months after the events does not provide the required foundation to show that he had the "opportunity" or the "capacity" to observe at the time the event occurred, or that he is now able to recall whatever he may have observed at the time. Therefore, Ladd's case is not akin to *Eldredge,* where the child witness was at least recalling actual, albeit incomplete, memories. *See,* 773 P.2d at 33. Accordingly, we conclude that the trial court did not err in determining that Ladd's dream was inadmissible and that this exclusion left no material facts in dispute at summary judgment.[4] Consequently, we do not address Ladd's separate argument that the trial court improperly weighed the evidence during summary judgment.

¶ 9 Next, Ladd argues that the trial court erred in determining that expert witness testimony was required in order for Ladd to establish the causation element of his negligence causes of action. We agree with the trial court.

¶ 10 "The essential elements of a negligence action are: (1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation,

2. Ladd's complaint also alleges that even if Ladd was ejected from the pickup in the rollover accident, "shortly after he was ejected, he approached [one of the eyewitnesses] to give him assistance [with Driver]," which conflicts with his dream testimony.

3. As of the date of this decision, the Federal and Utah versions of rule 602 are identical. The Federal rule has undergone only technical, not substantive, amendments since its enactment in 1975. *See* Fed.R.Evid. 602 advisory committee's notes. Those changes are also reflected in the current Utah rule. *See* Utah R. Evid. 602.

4. Ladd also contends that his dream merely refreshed his "complete recall of the accident ... over time." Defendants compare Ladd's dream to hypnotically-enhanced testimony, which the Utah Supreme Court deemed inadmissible because it "does not simply revive dormant memories, but augments a witness's actual memories by adding false or pseudo memories to them," *State v. Tuttle,* 780 P.2d 1203, 1207–12 & n. 6 (Utah 1989). Because Ladd's memory is of the dream, and therefore not a "recovered memory," we make no determination as to the admissibility of dream-based recovered memories.

both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff." *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). Utah courts generally require expert testimony to prove causation in tort cases in all but the "most obvious cases." *See Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 22, 176 P.3d 446 (internal quotation marks omitted). What is obvious "depends on the nature of the injury." *Id.* (internal quotation marks omitted). "Where the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony that the negligent act probably caused the injury." *Beard v. K–Mart Corp.*, 2000 UT App 285, ¶ 16, 12 P.3d 1015 (internal quotation marks omitted). A causation determination is generally a question of fact, but the trial court may make a legal ruling on this issue if "(1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation, or (2) where reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation." *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 601 (Utah Ct.App.1995) (internal quotation marks omitted).

¶ 11 Ladd did not designate any expert witnesses. Instead, in his initial discovery disclosures he listed several physicians and medical personnel as potential lay witnesses who "may have information regarding the medical treatment provided and [his] future prognosis." Ladd argues that his testimony about his injuries is sufficient to prove causation. Ladd's deposition explained that after he purportedly freed himself from the pickup, he discerned his injuries to consist of abdominal pain and a bleeding laceration near one eye, and that when he awoke after the semi-truck accident, his injuries included a laundry list of bruises, scrapes, and lacerations all over his body, a broken bone in one foot, multiple brain contusions, cognitive problems, and a punctured lung. Ladd argues that "[i]t is not outside of the realm of the lay person to understand that when a semi-tractor and trailer strikes a vehicle at speed sending the vehicle into a person that the person would suffer the types and serious[ness of] injuries alleged by [Ladd]."

¶ 12 We do not agree that causation is as obvious as Ladd implies. This is a complex case involving obscure medical details, including several brain injuries, and three automobile accidents, each of which could have potentially caused some or all of Ladd's injuries. Even assuming Ladd's testimony is sufficient to prove his less esoteric injuries, it is not enough to identify which of his multiple brain injuries were caused by which accident. We agree with Ladd that a pickup truck launched through the air by the impact of a semi-truck is a projectile capable of causing severe injury to any hapless individual in its trajectory. However, Ladd's testimony invites the fact finder not to simply *infer* that the impact caused his injuries but to *speculate* as to which injuries it caused. *See generally Lindsay v. Gibbons & Reed*, 27 Utah 2d 419, 497 P.2d 28, 31 (1972) ("A finding of causation cannot be predicated on mere speculation or conjecture, and the matter must be withdrawn from the jury's consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the defendant. Jurors may not speculate as to possibilities . . . ."(footnote omitted)). Accordingly, Ladd's testimony alone is insufficient to establish causation.

■ ¶ 13 Ladd also argues that his treating physicians, whom he designated as lay witnesses, can testify as to causation and presumably fill in any gaps left by Ladd's causation testimony. Lay witnesses can testify only to matters of which they have personal knowledge, *see* Utah R. Evid. 602, and it is undisputed that Ladd's treating physicians do not have personal knowledge of causation. Therefore, testimony from Ladd's treating physicians as to causation would go beyond the physicians' "factual description of his or her personal observations during treatment," *Pete v. Youngblood*, 2006 UT App 303, ¶¶ 13–15, 141 P.3d 629 (determining that the plaintiff's designation of her treating physician as a lay witness, and not an expert witness, foreclosed the physician's ability to offer opinion testimony in an affidavit as to standard of care and breach), and would amount to opinion testimony, *see Drew v.*

*Lee,* 2011 UT 15, ¶ 30, 250 P.3d 48 (explaining that a treating physician's testimony as to causation constitutes opinion testimony). Lay witnesses are prohibited from providing opinion testimony unless the "opinions or inferences ... are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Utah R. Evid. 701; *see also id.* R. 702 (explaining when expert testimony is appropriate and what constitutes expert testimony). However, a treating physician's testimony regarding the extent to which each of several automobile accidents caused or contributed to Ladd's various injuries is surely based on that physician's "specialized knowledge ..., skill, experience, training, or education," *see id.* R. 702(a), and therefore not within rule 701's exception. Thus, in order for any of Ladd's treating physicians to offer testimony as to causation, Ladd was required to designate them as expert witnesses. *See* Utah R. Civ. P. 26(a)(3); *Pete,* 2006 UT App 303, ¶ 11, 141 P.3d 629 (explaining that rule 26(a)(3) of the Utah Rules of Civil Procedure requires "disclosure of the identity of expert[witnesses]").[5] Without an expert witness designation, Ladd cannot establish causation. Accordingly, we affirm.

¶ 14 I CONCUR: STEPHEN L. ROTH, Judge.

THORNE, Judge (dissenting):

¶ 15 I respectfully dissent from the majority opinion's analysis affirming the entry of summary judgment on behalf of Defendants.

Ladd's deposition testimony clearly recounts his memory of being struck by Defendants' semi-truck. At most, it may be ambiguous as to the relationship between that memory and the dream referenced by the majority. Even if Ladd's testimony can be interpreted as indicating that his dream refreshed or revived his memory, his clear testimony that he does now remember the incident renders his testimony admissible. Under the circumstances, the ultimate accuracy and reliability of Ladd's memory is a question of fact that should have been decided by a jury. Further, assuming that his testimony is competent, Ladd's lay testimony would suffice to demonstrate that Defendants caused him substantial injury. For these reasons, the district court should have denied Defendants' motion for summary judgment. I would reverse the judgment below and allow Ladd to proceed with the development of his case.

¶ 16 The first ground relied upon by the district court in granting summary judgment was that Ladd's testimony that he had been struck by Defendants' semi-truck was not admissible because the brain-injured Ladd had remembered the incident only some months afterward, after having a dream about it. The only record evidence about the nature and source of Ladd's memory is a partial transcript of Ladd's deposition. The majority opinion concludes that Ladd's memory, as described in his deposition testimony, "is of the dream itself and the dream alone." *See supra* ¶ 8. I simply cannot read Ladd's deposition testimony in this way.

¶ 17 For many pages, Ladd testifies about the incident and his resulting injuries in a manner indistinguishable from any other de-

---

5. Ladd argues that *Drew v. Lee,* 2011 UT 15, 250 P.3d 48, negates his need to specifically designate an expert witness. We disagree. *Drew* involved the application of rule 26(a)(3)(B) of the Utah Rules of Civil Procedure, which states that " '[a party's expert] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case[,] ... be accompanied by a written report prepared and signed by the witness or party,' " *see id.* ¶ 8 (alterations and omission in original) (emphasis omitted) (quoting Utah R. Civ. P. 26(a)(3)(B)). The plaintiff in *Drew* designated several of his treating physicians as potential expert witnesses, but he did not submit any corresponding expert reports. *See id.* ¶¶ 3–4. The supreme court held

that treating physicians that are designated as potential expert witnesses but who are not retained specifically to provide expert testimony may "testify about treatment at trial and ... offer an opinion about causation and prognosis without filing an expert report." *Id.* ¶ 30; *accord Pete v. Youngblood,* 2006 UT App 303, ¶ 12, 141 P.3d 629 (explaining that rule 26(a)(3)(B) does not necessarily require an expert report to be submitted for every expert witness, but that rule 26(a)(3) does require designation of every potential expert witness). Ladd simply never designated any expert witnesses. With no expert witnesses having been designated, case law regarding the filing of expert reports is irrelevant.

position. He is repeatedly asked questions about what he remembers, and he answers with detailed information about the events immediately preceding and up through the collision with Defendants' semi-truck. Several times, he admits that he does not remember certain details about which he was asked. This questioning goes on for over sixty pages of transcript with no mention of Ladd having a dream or the dream having anything to do with his memory of the incident.[1] Instead, the questions and answers are consistently phrased in terms of what Ladd remembered, what his memories were, and his descriptions of what had happened.

¶ 18 It is not until page sixty-eight of Ladd's deposition that he first testifies about his dream. In response to a question that is itself omitted from the record, Ladd responds,

About four or six months after the accident, I had a dream which was essentially a flashback of me reliving what I've just gone through. My brain was starting to reboot and remember things that—I was still learning how to remember things at the time, if that makes any sense.

Ladd was then asked what new memories he acquired with the dream, and he responded, "The dream I had was the full onset of the accident." Counsel asked, "Meaning what?" Ladd responded with a recitation of his memories of the accident. The following colloquy then occurred:

[Counsel:] So you just described the dream that you had six or so months after the accident; is that right?

[Ladd:] Yeah. Yes.

[Counsel:] Which is essentially what you've told me today is your memory of the accident?

[Ladd:] It's actually me reliving my dream, yes.

[Counsel:] What I'm wondering is prior to that dream, what memories of the accident did you have?

Ladd and counsel then spent a little over two more pages exploring Ladd's pre-dream memory, which essentially ended at the time of the initial collision and rollover. The remainder of Ladd's deposition is omitted from the record.

¶ 19 The majority interprets this testimony as clearly indicating that Ladd's memory is of the dream and not of the incident itself. I disagree. Ladd testified extensively and under oath as to the detailed facts of the incident, and his testimony was very clear that he was testifying about the incident itself and not about the dream. By contrast, the later testimony about the dream was confusing and ambiguous. Ladd variously described the dream as a flashback, as him reliving the events, and as part of the process of "reboot[ing] and *remember[ing] things*" following his head injury. (Emphasis added.) He also clearly indicated that the contents of the dream were substantively coincident with his memories of the incident, and that his memory had not fully returned prior to him having the dream.

¶ 20 What Ladd did *not* do is expressly testify that what he had previously described as his memories of the incident were in fact his memories of the dream.[2] His testimony about the dream may be consistent with such an interpretation, but it is equally consistent with Ladd characterizing the very process of his memory returning as a "dream" or a "flashback." It is undisputed that Ladd suffered serious brain injuries and at least some initial memory loss from the incident,[3] and

1. I acknowledge that the only record before us is a partial transcript and that it is possible that Ladd mentioned his dream in some omitted portion of his deposition. However, if that were the case, it would seem that Defendants would have ensured that that portion of the transcript was made a part of the record on appeal.

2. Of course, he also did not expressly clarify that his memory was of the incident itself rather than the dream, but that only leaves an ambiguity that should have been argued to and decided by a jury.

3. It does not seem irrelevant here that Defendants are attempting to take advantage of Ladd's memory loss when they themselves are alleged to have caused it, presenting a situation "somewhat reminiscent of the often-told classic about the accused who had killed his parents, and threw himself upon the mercy of the court on the ground that he was an orphan." *Bryant v. Turner,* 19 Utah 2d 284, 431 P.2d 121, 123 (1967).

Ladd's experience of his brain reconstructing its memories of the traumatic events that caused his injuries was no doubt a confusing and frightening one. That the brain-injured Ladd might later describe such a process as a dream, a flashback, or a reboot does not contradict his sworn testimony that he did witness and remember the events causing his injuries. And if Ladd's "dream" was in fact the return of his memory, then it would make perfect sense that the dream and the memory contained the same facts and that Ladd would say that he did not remember those facts prior to the occurrence of the dream, flashback, or reboot, i.e., prior to the return of his memory.

¶ 21 Alternatively, Ladd's testimony could be interpreted as stating that his dream refreshed or revived his memory. There is nothing improper about having one's memory refreshed—Utah Rule of Evidence 612 expressly provides a procedure for using writings to refresh memory for testimonial purposes. *See* Utah R. Evid. 612. And, as Judge Learned Hand famously wrote, "Anything may in fact revive a memory: a song, a scent, a photograph, [an] allusion, even a past statement known to be false." *United States v. Rappy*, 157 F.2d 964, 967 (2d Cir.1946). Here, it is entirely consistent with Ladd's testimony that his dream did in fact refresh or revive his memories of the incident, memories that had been temporarily lost due to his head injury. And such a spontaneous refreshment of Ladd's memory would not present the same problems that caused the Utah Supreme Court to reject hypnotically-recovered memories as unreliable in *State v. Tuttle*, 780 P.2d 1203 (Utah 1989). *See generally id.* at 1209 ("The courts that have excluded admission of hypnotically enhanced testimony have done so on grounds that such testimony is unreliable. They have noted that the relevant scientific community does not accept forensic hypnosis as a dependable method of refreshing recollection. Or, they have reasoned that despite the lack of scien-

tific acceptance, there is a great danger that jurors will give undue credence to such 'scientifically enhanced' testimony."); *id.* at 1207 n. 6 ("Scientific research suggests that in many cases, hypnosis does not simply revive dormant memories, but augments a witness's actual memories by adding false or pseudo memories to them.").

¶ 22 Under either of these reasonable interpretations of Ladd's testimony, Ladd has presented a sworn statement regarding events that he was both present for and claims to have observed and remembered. This is admissible testimony. *See generally* Utah R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."); *State v. Eldredge*, 773 P.2d 29, 33 (Utah 1989) ("[Rule 602] merely requires that the witness have the opportunity and the capacity to perceive the events in question."). Due to the clarity of Ladd's testimony about his memory and the ambiguity of his later statements about the dream, I would deem Ladd's testimony admissible in its entirety and allow a jury to decide what Ladd's memories actually are and whether those memories might establish liability against Defendants when weighed against Defendants' competing evidence.[4]

¶ 23 The district court also granted summary judgment on the ground that Ladd failed to designate any expert witnesses to testify on the issue of medical causation. It is well settled that lay testimony alone cannot establish medical causation in cases where such causation would not be obvious to a layperson. *See Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 23, 176 P.3d 446 (requiring expert testimony where causation question involved "medical factors sufficiently complicated to be beyond the ordinary senses and common experience of a layperson"); *Beard v. K–Mart Corp.*, 2000 UT App

4. I am also unpersuaded by the majority opinion's reliance on Ladd's complaint, wherein he alleged that he had a "limited memory of the accident," or the majority's characterization that Ladd is "attempt[ing] to fill his memory gap with the contents of a dream." *See generally supra*

¶ 8. Ladd's entire testimony clearly represents a limited memory. He readily admits to losing consciousness immediately following the rollover and again shortly after Defendants' semi-truck struck him. However, his memory that the semi-truck *did* strike him is clear and complete.

285, ¶ 16, 12 P.3d 1015 ("[I]n all but the most obvious cases, testimony of lay witnesses regarding the need for specific medical treatment is inadequate to submit the issue to the jury."). The majority opinion concludes that this is a case requiring expert medical causation testimony because it "is a complex case involving obscure medical details, including several brain injuries, and three automobile accidents, each of which could have potentially caused some or all of Ladd's injuries." *See supra* ¶ 12.

¶ 24 In light of Ladd's deposition testimony, I disagree. It is undisputed that Ladd's injuries were caused by some combination of three collisions. And Ladd recalls and can testify as to his physical condition following the first two collisions but prior to the third collision involving Defendants. Thus, to the extent Ladd can establish injuries that did *not* exist prior to the third collision, it becomes "obvious" under the circumstances that such injuries were caused by the collision involving Defendants,[5] and Ladd's lay testimony would therefore be sufficient to establish that Defendants caused those injuries.[6] *See Beard,* 2000 UT App 285, ¶ 16, 12 P.3d 1015.

¶ 25 For these reasons, the district court should not have entered summary judgment in favor of Defendants, and I would reverse the district court's summary judgment order and allow Ladd to proceed with the development and presentation of his case. Accordingly, I dissent from the majority opinion.

---

5. Ladd also testified, directly or by implication, that he was seat-belted into Driver's vehicle during the first and second collisions, while in the third collision he was standing outside Driver's vehicle when Defendants' semi-truck crashed into it. If believed, this testimony could identify certain injuries as caused by the third collision or not. For example, a seat-belt shaped bruise across Ladd's torso would likely not be the result of the third collision, while abrasions with asphalt or gravel ground into them likely would be.

6. It is possible that some of Ladd's injuries might not be amenable to such an analysis. For example, if Ladd claimed that he did not suffer brain contusions in the first two collisions, but Defendants presented expert testimony that a layperson cannot self-diagnose such an injury, then that particular claim might be subject to partial summary judgment. However, if Ladd's testimony creates a genuine fact question as to whether the cause of a particular injury is obvious, I would allow that issue to go to the jury.