2013 UT App 285

**Keith LILLEY and Sharon Lilley,
Plaintiffs and Appellants,**

v.

**JP MORGAN CHASE and Blake Ingram,
Defendants and Appellee.**

**No. 20120625–CA.**

Court of Appeals of Utah.

Nov. 29, 2013.

---

Matt G. Wadsworth, Brian E. Arnold, and Kara M. Nally, Salt Lake City, for Appellants.

Ford G. Scalley and Jonathan H. Rupp, Salt Lake City, for Appellee.

Memorandum Decision

CHRISTIANSEN, Judge:

¶ 1 Keith and Sharon Lilley (Plaintiffs) appeal from the district court's order dismissing their breach of contract and negligence causes of action against Defendant Blake Ingram. We affirm.

¶ 2 "When reviewing a 12(b)(6) motion [to dismiss], we recite the facts in a light most favorable to the non-moving party. . . ." *Wagner v. State*, 2005 UT 54, ¶ 2, 122 P.3d 599. In 2003, Plaintiffs purchased undeveloped land on which to build a home in Park City, Utah. On December 16, 2005, Plaintiffs signed mortgage documents with JP Morgan Chase Bank, NA (Lender) for construction-to-permanent financing for a single unit, owner-occupied family home. Prior to approving Plaintiffs' loan and in contemplation of funding the loan, Lender ordered an appraisal from Ingram, a real estate appraiser, who completed the appraisal in October 2005.

¶ 3 After construction of the home was completed, Plaintiffs defaulted on their loan. In an amended complaint filed on July 5, 2011, Plaintiffs alleged that Ingram breached his contract and was negligent in preparing an inflated appraisal of Plaintiffs' home. Plaintiffs claimed that they relied on Ingram's appraisal when they entered into their loan agreement with Lender and that the negligently inflated appraisal caused them to borrow too much for the construction of their residence. Ingram filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, arguing that Plaintiffs' complaint failed to state a claim upon which relief could be granted. The district court dismissed Plaintiffs' breach of contract claim, concluding that Plaintiffs were not third-party beneficiaries to any contract between Lender and Ingram. The court also ruled that Plaintiffs' negligence claim against Ingram was barred by the general four-year statute of limitations. *See* Utah Code Ann. § 78B–2–307(1)(a) (LexisNexis 2012). Plaintiffs appeal.

¶ 4 Plaintiffs challenge the district court's rejection of their third-party beneficiary claim and the court's application of the four-year statute of limitations to their negligence claim. "The grant of a motion to dismiss pursuant to rule 12(b)(6) is a question of law that we review for correctness, affording the [district] court's decision no deference." *Williams v. Bench*, 2008 UT App 306, ¶ 6, 193 P.3d 640. In determining whether the district court properly granted Ingram's motion to dismiss, "we must accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to [Plaintiffs]." *See Ho v. Jim's Enters., Inc.*, 2001 UT 63, ¶ 6, 29 P.3d 633 (citation and internal quotation marks omitted).

## I. Third–Party Beneficiary Claim

¶ 5 Plaintiffs first challenge the district court's dismissal of their breach of contract claim. Because only Lender and Ingram are direct parties to the appraisal contract, Plaintiffs must establish that they are third-party beneficiaries of that contract in order to pursue an alleged breach. "The existence of third party beneficiary status is determined by examining a written contract." *Wagner v. Clifton*, 2002 UT 109, ¶ 11, 62 P.3d 440 (citation and internal quotation marks omitted). "The written contract must show that the contracting parties clearly intended to confer a separate and distinct benefit upon the third party." *Id.* (citation and internal quotation marks omitted). Indeed, "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the [contract]. . . . The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 47, 28 P.3d 669 (alterations in original) (citation and internal quotation marks omitted). And "only if the written contract's clear intent is to confer rights upon a third party may that third party enforce rights and obligations of the contract." *Wagner*, 2002 UT 109, ¶ 13, 62 P.3d 440. Finally, "[a] third party who benefits only incidentally from the performance of a contract has no right to recover under that contract." *American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1188 (Utah 1996) (citation and internal quotation marks omitted), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 55, 221 P.3d 234.

¶ 6 The only written document in the record on appeal that might evidence a written contract between Lender and Ingram—and thus demonstrate their intent to benefit Plaintiffs—is the appraisal report drafted by Ingram. The appraisal report states the following as its intended use:

> The intended use of this appraisal report is to assist the lender in evaluating the subject property for lending purposes. This report has been prepared for [Lender], who is the client. *This report is intended for use only by the aforementioned client and is not intended for use by any other party for any other purpose.* Information regarding this appraisal will be released only to the client regardless of who has paid or will pay for this report.

(Emphasis added.) In another section, the report also states, "This report is intended for use[ ] only by [Lender] for loan purposes only and *is not intended for use by any other party or for any other purpose,*" and, "The purpose of this appraisal is to estimate market value. . . . The function of this report is to assist the above-named lender in evaluating the subject property for mortgage lending purposes." (Emphasis added.)

¶ 7 Plaintiffs argue that the "only reason Mr. Ingram performed an appraisal was for [Plaintiffs'] financial lending decision." (Emphasis omitted.) However, the plain language of the appraisal report indicates that the function and purpose of the report was to assist *Lender* in "evaluating the subject property for mortgage lending purposes." Plaintiffs have failed to identify any provision in the appraisal report suggesting that the appraisal was for their benefit. Instead, the written language of the appraisal report expressly states the opposite—that the report was not to be used by *"any other party or for any other purpose."* (Emphasis added.) Therefore, the plain language of the appraisal report does not demonstrate a "clear intent . . . to confer rights" upon Plaintiffs such that they may "enforce rights and obligations of the contract." *See Wagner*, 2002 UT 109, ¶ 13, 62 P.3d 440. Indeed, the plain language of the report expressly rejects such an intent.

¶ 8 Plaintiffs direct our attention to material outside the four corners of the appraisal report and the record in arguing that they are the intended third-party beneficiaries of the appraisal. For example, they point to the appraisal order form submitted by Lender to Ingram. Plaintiffs assert that every such order form "contains certain provisions stating that [the appraisal] had to be done in conformance with Uniform Standards of Professional Appraisal Practice ('USPAP') and FANNIE MAE/FREDDIE MAC guidelines." Plaintiffs also claim that the Equal Credit Opportunity Act, along with the order form and "other contemporaneous facts" impute Ingram "with the knowledge that [Plaintiffs] are relying and using [Ingram's] appraisal in making their financial lending decision."

¶ 9 As an initial matter, no copy of the order form is included in the record for our review. Moreover, even accepting as true Plaintiffs' allegation that the order form and relevant regulations impute to Ingram the knowledge that Plaintiffs claim it does, we note that "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the [contract]." *SME Indus.*, 2001 UT 54, ¶ 47, 28 P.3d 669 (alterations in original) (citation and internal quotation marks omitted). Any knowledge on Ingram's part that Plaintiffs would subsequently use the appraisal report is insufficient to create third-party beneficiary status in Plaintiffs because the appraisal report was not "undertaken for [Plaintiffs'] direct benefit," nor did the appraisal report itself "affirmatively make this intention clear." *Id.* (citation and internal quotation marks omitted). Accordingly, we conclude that the district court correctly dismissed Plaintiffs' breach of contract claim as a matter of law because Plaintiffs are not third-party beneficiaries of the appraisal report.

## II.  Plaintiffs' Negligence Claim

¶ 10 The district court also determined that Plaintiffs' negligence claim was barred by the four-year statute of limitations. Utah Code section 78B–2–307(1)(a) provides that an "action may be brought within four years . . . after the last charge is made or the

last payment is received . . . upon a contract, obligation, or *liability not founded upon an instrument in writing.*" Utah Code Ann. § 78B–2–307(1)(a) (LexisNexis 2012) (emphasis added). The final phrase of section 78B–2–307(1)(a) is a catch-all provision that includes negligence actions. *See, e.g., Ellis v. Estate of Ellis,* 2007 UT 77, ¶ 30, 169 P.3d 441 ("Ellis was required to file her negligence claim within four years pursuant to the general statute of limitations."); *DOIT, Inc. v. Touche, Ross, & Co.,* 926 P.2d 835, 843 (Utah 1996) (stating that negligence claims are governed by the catch-all four-year statute of limitations); *Ladd v. Bowers Trucking, Inc.,* 2011 UT App 355, ¶ 4 n. 1, 264 P.3d 752 ("A four-year statute of limitations applies to negligence actions. . . .").

█ ¶ 11 A third party may bring a tort action against an appraiser for negligent preparation of an appraisal report, regardless of third-party beneficiary status. In *West v. Inter–Financial, Inc.,* 2006 UT App 222, 139 P.3d 1059, this court held that "[r]eal estate appraisers have an independent duty of care to persons with whom they have no contractual relationship when performing an appraisal." *Id.* ¶ 22. However, such a negligence action must be filed within the four-year statute of limitations period. *See Ladd,* 2011 UT App 355, ¶ 4 n. 1, 264 P.3d 752. Because Plaintiffs obtained financing from Lender in reliance on the appraisal report on December 16, 2005, any alleged injury resulting from that report must have occurred on that date. *See Clark v. Deloitte & Touche LLP,* 2001 UT 90, ¶ 22, 34 P.3d 209. Thus, the four-year limitations period had began to run as of December 16, 2005, and Plaintiffs' negligence action must have been filed as of December 16, 2009. Plaintiffs filed their first complaint on March 11, 2011. Accordingly, the district court correctly determined that any negligence claim brought by Plaintiffs was clearly barred by the four-year statute of limitations imposed by section 78B–2–307(1)(a).

### III. Liability Stemming from "Written Instruments"

█ ¶ 12 Alternatively, Plaintiffs argue that the four-year statute of limitations does not bar their claims because Ingram's liability arose from "written instruments," as opposed to an independent tort duty. Under this theory, they argue that the six-year statute of limitations set forth in Utah Code section 78B–2–309(2) applies because that statute allows for causes of action to be brought within six years "upon any contract, obligation, or *liability founded upon an instrument in writing.*" Utah Code Ann. § 78B–2–309(2) (LexisNexis 2012) (emphasis added).

¶ 13 However, the language of the relevant written documents is not sufficiently connected with Plaintiffs' cause of action for the six-year statute of limitations to apply in this instance. Our supreme court has observed that *Bracklein v. Realty Insurance Co.* sets forth "the test for determining whether the six-year [statute of limitations] applies to a particular case." *Brigham Young University v. Paulsen Construction Co.,* 744 P.2d 1370, 1372 (Utah 1987). Under *Bracklein,* "if the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing." *Bracklein v. Realty Insurance Co.,* 95 Utah 490, 80 P.2d 471 (1938); *see also Paulsen,* 744 P.2d at 1372. The liability must "grow[ ] out of written instruments, not remotely or ultimately, but immediately." *Bracklein,* 80 P.2d at 476 (emphasis, citation, and internal quotation marks omitted). The *Bracklein* court further explained,

> If the instrument acknowledges or states a fact from which the law implies an obligation to pay, such obligation is founded upon a written instrument within the statute. If the writing upon its face shows a liability to pay, such liability is on a written instrument within the statute of limitations.

*Id.*

¶ 14 Again, the only document available for our review is Ingram's appraisal report. Nothing in this report suggests, either implicitly or on its face, that "liability arises or is assumed or imposed" upon Ingram with respect to Plaintiffs. For example, it does not include any terms that would impose upon Ingram an "obligation to pay" or confer

any specific benefit on Plaintiffs. Nor does the report provide for any remedies to Plaintiffs in the event of a breach by Ingram. Other than citing the general duties and imputed knowledge ascribed to real estate appraisers as outlined in USPAP and the Fannie Mae/Freddie Mac guidelines—and that might have been part of the order form—Plaintiffs are unable to identify any language in the appraisal report that "immediately" imposes liability on Ingram with respect to Plaintiffs. *See id.* Furthermore, it is unlikely that Ingram's liability, if it exists at all, would even stem "remotely or ultimately" from the appraisal report. *See id.*

¶ 15 By contrast, in *Paulsen,* the supreme court determined that liability did flow from written instruments because the plaintiffs in that case were able to show that the defendants had "supervisory responsibilities as general contractors *as defined under their individual agreements.*" *Paulsen,* 744 P.2d at 1372. It was only the "alleged breach of [the defendants'] contractual duties [that gave the plaintiff] any basis for asserting that they [were] liable." *Id.* In other words, the written instruments in *Paulsen* were sufficient to impose liability because they immediately established the defendants' responsibilities and corresponding liabilities with respect to the plaintiffs. Such is not the case here, and we therefore conclude that the appraisal report does not sufficiently impose liability on Ingram with respect to Plaintiffs. Thus, Plaintiffs have no cognizable claim that would fall within the six-year statute of limitations.

¶ 16 Accordingly, we conclude that the district court correctly dismissed all of Plaintiffs' claims against Ingram. Affirmed.

Judge MICHELE M. CHRISTIANSEN authored this Memorandum Decision, in which Judge CAROLYN B. McHUGH and Senior Judge RUSSELL W. BENCH concurred.[1]