2018 UT App 162

## THE UTAH COURT OF APPEALS

TRIPLE J PARKING INC.,
Appellant,
*v.*
SCSB LLC,
Appellee.

Opinion
No. 20170048-CA
Filed August 23, 2018

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 160906725

Donald L. Dalton, Attorney for Appellant

Matthew N. Evans and Matthew M. Cannon,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1     In this case, Triple J Parking Inc. paved the property and put up a parking lot—and now it wants to recoup the improvement costs.[1] For nearly nine years, Triple J leased ground property from SCSB LLC, pursuant to a lease agreement,

---

1. Joni Mitchell, Bob Dylan, and the Counting Crows can all attest: "you don't know what you've got 'til it's gone." Joni Mitchell, *Big Yellow Taxi*, *on* Ladies of the Canyon (Reprise Records 1970); Bob Dylan, *Big Yellow Taxi*, *on* Dylan (Columbia Records 1973); Counting Crows, *Big Yellow Taxi*, *on* Hard Candy (Geffen Records 2002).

in order to run its park-and-ride business. During that time, Triple J made millions of dollars' worth of improvements to the property—but did not negotiate an agreement with SCSB regarding repayment or compensation for those improvements. In September 2016, the parties could not come to an agreement regarding renewal of the lease, and SCSB terminated the agreement, with the effective end date in October 2016. While the lease agreement with Triple J was still operative, SCSB negotiated a separate, future lease on the property with a new tenant, whose lease agreement would commence after Triple J's agreement had expired and after Triple J had vacated the premises. Upon questioning whether the negotiations with the new tenant violated the non-competition clause in its own lease, Triple J brought suit against SCSB, alleging that SCSB breached (1) the non-competition provision of the ground lease agreement and (2) the implied covenant of good faith and fair dealing. SCSB moved to dismiss the complaint, and the district court granted its motion. Triple J now appeals the district court's ruling. We affirm.

BACKGROUND

¶2     In November 2007, Triple J entered into a ground lease agreement (the Lease Agreement) with SCSB. The leased lot (the Property) was located near the airport and provided approximately six acres to Triple J for use as a parking lot, with an optional 2.87 acres also to be used as a parking facility.

¶3     The initial term of the Lease Agreement was three and a half years, but the Lease Agreement further specified that upon expiration, it would continue and renew on a month-to-month basis. Additionally, the Lease Agreement contained a non-competition provision. The Lease Agreement was silent, however, on the issue of any improvements made to the Property.

¶4     After the Lease Agreement became effective, Triple J spent millions of dollars improving the Property and

subsequently began operating a parking facility. Pursuant to the Lease Agreement, after the original term had expired in April 2011, the Lease Agreement continued on a month-to-month basis until September 2016. At that time, SCSB proposed the elimination of the non-competition provision in the lease, sparking negotiations between the two parties. During these discussions, SCSB acknowledged that it was in dialogue with a third party with respect to the sale of the Property.

¶5     Triple J and SCSB could not reach a satisfactory resolution regarding the non-competition provision or a further renewal. Accordingly, in September 2016, SCSB served Triple J with a Notice of Termination of Ground Lease, and Triple J vacated the Property by the end of October 2016. Triple J asserts that in September 2016, SCSB sold, or agreed to sell, the Property to a competing parking business, but it was later discussed that the new agreement may have been a three-year lease with an option to purchase.

¶6     Upon discovering that SCSB had leased the Property to a competitor, Triple J filed suit, asserting two claims for relief—breach of the Lease Agreement and breach of the implied covenant of good faith and fair dealing—and seeking damages in the amount it had spent on improving the Property over many years. SCSB moved to dismiss the complaint, and the district court granted its motion. Triple J now appeals.

ISSUES AND STANDARD OF REVIEW

¶7     Triple J asserts that the district court incorrectly concluded that Triple J failed to allege facts demonstrating that SCSB breached the non-competition provision of the Lease Agreement by negotiating a future lease on the Property with a competing parking entity, to commence after Triple J's Lease Agreement had expired. Similarly, Triple J asserts that the district court erred in concluding that Triple J failed to allege facts upon which a claim for breach of the implied covenant of good faith and fair dealing could be maintained.

¶8   The grant of a motion to dismiss pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure presents a question of law that this court reviews for correctness. *See Lilley v. JP Morgan Chase*, 2013 UT App 285, ¶ 4, 317 P.3d 470; *see also* Utah R. Civ. P. 12(b)(6). When reviewing a dismissal under rule 12(b)(6), "we accept the plaintiff's description of facts alleged in the complaint to be true . . . . The district court's ruling should be affirmed only if it clearly appears that the plaintiff can prove no set of facts in support of [the] claim." *America West Bank Members, L.C. v. State*, 2014 UT 49, ¶ 7, 342 P.3d 224 (cleaned up).

¶9   The Lease Agreement was referenced several times in the Complaint and, therefore, the language of the Lease Agreement was properly considered by the district court on SCSB's motion to dismiss. *See Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 13, 104 P.3d 1226 ("If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. The classic example is a contract where the complaint alleges a breach of contract." (cleaned up)). Here, we need not look beyond the complaint and the language of the lease to determine whether a breach was sufficiently alleged.

ANALYSIS

¶10   SCSB maintains, and Triple J does not dispute, that absent an agreement otherwise, a tenant is not entitled to compensation for improvements made to a leasehold. *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977) ("The right of plaintiff to recover for the goods incorporated into defendant's real property must be based upon an agreement, either express or implied, and the stipulated facts are clear that none existed."). Triple J acknowledges that the Lease Agreement is silent on the issue of compensation for improvements. Therefore, Triple J is not entitled to compensation by way of express agreement regarding those improvements. Instead,

Triple J claims that it is entitled to those sums as damages because SCSB negotiated with a competitor to lease the Property for a future period beginning after the termination of the Lease Agreement, thereby allegedly breaching the non-competition provision and the implied covenant of good faith and fair dealing. For the reasons that follow, we reject these contentions.[2]

## I. Non-Competition Provision

¶11    Triple J first contends that the district court incorrectly concluded that Triple J failed to allege facts demonstrating that SCSB breached the Lease Agreement between the parties by agreeing to lease the Property to a competing parking entity after the Lease Agreement had expired. Simply stated, Triple J alleges that SCSB violated the non-competition provision by virtue of negotiating and entering into a lease with a future tenant while Triple J's Lease Agreement was still operative. This argument fails.

¶12    SCSB's actions are not prohibited under the plain language of the Lease Agreement. The Lease Agreement contains the following non-competition provision:

> Non-competition. To secure the interests of Lessee hereunder, and as a material inducement to Lessee to enter into this Lease, Lessor, its manager, members and affiliates will not, directly or indirectly compete with Lessee, its successors or assigns within a two (2) mile radius from the Leased Land. For the purposes of this paragraph, the term **"*compete*"** means owning, managing, operating, controlling, or participating in the

---

2. We note that the request for damages in the amount of the Property's improvements has no tether whatsoever that we can perceive to Triple J's alleged injury for breach of contract. But this was not the basis of the district court's conclusion.

ownership, management, operation or control of, any business, whether in corporate, proprietorship, or partnership form or otherwise, where such business involves the operation of a parking facility and related amenities; and the term "***affiliate***" means any legal entity or individual who directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with, Lessor or Lessee, as applicable.

¶13  On appeal, SCSB contends that the purpose of this provision was to prevent SCSB from "leas[ing] any surrounding property to a competing parking concern during the term of the Lease Agreement." In contrast, Triple J maintains that a plain reading of the provision includes the Property itself. This difference of interpretation is immaterial. Even if Triple J is correct, the actual terms of the Lease Agreement do not provide a basis for claiming breach here. "Competing," as specified in the provision, requires SCSB to be involved in the "operation of a parking facility and related amenities." Here, Triple J has failed to assert that SCSB was involved in the operation of any parking facility or related amenities during the lease term. No "ownership, management, operation or control of" a competitor's business occurred *during* Triple J's lease period— not even for one minute—and therefore, no breach was sufficiently alleged. Accordingly, Triple J has failed to state a claim that SCSB breached the non-competition provision.

¶14  While Triple J alleges that the mere act of selling or leasing land to a tenant for a future term is the same as "ownership, management, operation or control of"[3] a competing

---

3. *See, e.g., Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (stating that the plain and ordinary meaning of operate is "to control or direct the functioning of," or "to conduct the affairs of; manage" (cleaned up)); *see also Nathanson*

(continued…)

parking concern, we are not persuaded.[4] The plain language of the Lease Agreement does not restrict SCSB from negotiating with any third party while the Lease Agreement was in effect. In fact, Triple J concedes, "Certainly, the parties did not use the word 'lease' in the definition of prohibited acts of competition." Simply put, Triple J has failed to allege facts that would trigger the application of the non-competition provision and, therefore, Triple J fails to state a claim as a matter of law.

## II. Implied Covenant of Good Faith and Fair Dealing

¶15 Triple J also argues that the district court incorrectly concluded that Triple J failed to allege facts demonstrating that SCSB breached the implied covenant of good faith and fair dealing associated with the Lease Agreement when SCSB signed a new lease with a different tenant during the term of the Lease Agreement. Triple J seeks to recover the cost of the improvements made to the property—millions of dollars—based on this alleged breach.

---

(…continued)
*v. Spring Lake Park Panther Youth Football Ass'n*, 129 F. Supp. 3d 743, 749 (D. Minn. 2015) ("Operates has been accorded its plain and ordinary meaning of put or keep in operation, to control or direct the function of, or to conduct the affairs of; manage." (cleaned up)).

4. When interpreting a contract, we look "first to the plain language within the four corners of the document. . . . If we find the language unambiguous, we interpret the contract as a matter of law. We find ambiguity only where the language of the contract is reasonably capable of being understood in more than one sense." *Peterson & Simpson v. IHC Health Services, Inc.*, 2009 UT 54, ¶ 13, 217 P.3d 716 (cleaned up). Here, the language of the contract is unambiguous, and we interpret the non-competition provision as a matter of law.

¶16 Under the implied covenant of good faith and fair dealing, each party to a contract "impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991). However, the "reach of the implied covenant of good faith and fair dealing extends no further than the purposes and express terms of the contract." *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 22, 84 P.3d 1154.

¶17 To allow Triple J to recover under the facts alleged here would run afoul of established law. This court has previously rejected the notion that the implied covenant of good faith and fair dealing can be used to rewrite a contract, holding,

> It is fundamental that every contract imposes a duty on the parties to exercise their contractual rights and perform their contractual obligations reasonably and in good faith. Nonetheless, a court may not make a better contract for the parties than they have made for themselves; furthermore, a court may not enforce asserted rights not supported by the contract itself. It cannot be adopted as a general precept of contract law that, whenever one party to a contract can show injury flowing from the exercise of a contract right by the other, a basis for relief will be somehow devised by the courts.

*Ted R. Brown & Assocs., Inc. v. Carnes Corp.*, 753 P.2d 964, 970–71 (Utah Ct. App. 1988) (cleaned up).

¶18 Here, Triple J received the benefits—the fruits—it was contractually entitled to, namely: the use of the Property and subsequent improvements, along with a non-competition agreement preventing SCSB from operating any rival business, for the entirety of the nearly nine-year Lease Agreement. Despite receiving the fruits of the contract, Triple J asks us to interpret

the Lease Agreement to mean that it was entitled to receive compensation for the improvements even though the Lease Agreement was silent on this point. Silence in the lease on the issue of improvements has consequences as a matter of law. *See supra* ¶ 10. In this case, silence means that Triple J was not entitled to recover costs relating to improvements that it made to the Property.

¶19    Triple J could have insisted on addressing this issue in the Lease Agreement, but apparently did not. It is not the place of this court to "make a better contract" for Triple J than it made for itself. *See Ted R. Brown & Assocs.*, 753 P.2d at 970. Because effectively adding a term about the improvements remains outside the scope of the implied covenant of good faith and fair dealing, and because nothing in Triple J's complaint alleges that SCSB interfered in any way with Triple J receiving the complete fruits of its contract, the district court properly dismissed the claim under rule 12(b)(6).

CONCLUSION

¶20    The district court correctly held that Triple J failed to state a claim when it alleged that SCSB breached the Lease Agreement by negotiating a separate lease with a future tenant—effective after Triple J had vacated the property. Additionally, the district court correctly dismissed Triple J's claim for breach of the implied covenant of good faith and fair dealing.

¶21    Affirmed.

_____