2011 UT 72

**Marco A. DONJUAN, Appellant,**

v.

**Gabrielle McDERMOTT, Appellee.**

**No. 20100012.**

Supreme Court of Utah.

Nov. 22, 2011.

Jennifer D. Reyes, Dale M. Dorius, Brigham City, for appellant.

Larry S. Jenkins, Lance D. Rich, Brinton M. Wilkins, Salt Lake City, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 Utah Code section 78B–6–121 provides that an unwed father's consent to the adoption of his child is not required unless he files a paternity petition and a sworn affidavit stating, among other things, that he is willing to pay child support and take custody of the child. The statute requires that the father comply with these requirements before the mother executes her consent to the adoption.

¶ 2 This case requires us to determine whether a paternity petition can be amended under rule 15 of the Utah Rules of Civil Procedure to include the sworn affidavit required by section 78B–6–121 after a mother has executed her consent to an adoption and whether the amended petition relates back to the date of the original petition. Because Utah Code section 78B–6–120 requires strict compliance with the affidavit requirement, we hold that a paternity petition cannot be amended to include a sworn affidavit after the mother has executed her consent to adoption.

¶ 3 In this case, the child's father, Mr. Donjuan, failed to include the sworn affidavit required by section 78B–6–121 in his original paternity petition. Although Mr. Donjuan later amended his original petition to include the sworn affidavit, his amended petition was filed after the child's mother, Ms. McDermott, had executed her consent to an adoption. The district court dismissed Mr. Donjuan's amended petition as being untimely. On appeal, Mr. Donjuan argues that rule 15 permits amendment of his paternity petition and that his amended petition relates back to the date of his original petition. We hold that the relation back doctrine of rule 15 does not apply to this case. Application of the doctrine here would upset the legislature's intent that unmarried biological fathers "strictly comply" with the requirements of section 78B–6–121. As a result, we affirm.

¶ 4 Mr. Donjuan also asks us to determine whether the district court's decision violates the Utah Constitution, the U.S. Constitution, and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2006). We decline to consider Mr. Donjuan's constitutional claims because he failed to preserve them in the district court. Mr. Donjuan also failed to preserve his PKPA claim. Despite this, he argues that we may address his claim on appeal because the PKPA deprived the district court of subject matter jurisdiction. But the PKPA does not divest a district court of its subject matter jurisdiction. As a result, Mr. Donjuan may not bring his PKPA claim for the first time on appeal. We therefore affirm the decision of the district court.

## BACKGROUND

¶ 5 As a result of her relationship with Mr. Donjuan, Ms. McDermott became pregnant. Before the child was born, Mr. Donjuan expressed an interest in raising the child and notified Ms. McDermott that he did not want to place their child for adoption. Additional-

ly, Mr. Donjuan initiated a petition for legitimation and a petition for paternity in the state of Georgia. In his legitimation petition, Mr. Donjuan requested that he be given primary physical custody of the child and that Ms. McDermott pay child support. He also requested that Ms. McDermott be "enjoined from unilaterally removing the minor child from the jurisdiction of [the] Court pending resolution of [the] matter." Because Georgia law does not allow the filing of a legitimation claim before the birth of the child, the Georgia court dismissed Mr. Donjuan's legitimation petition. But it denied Ms. McDermott's request to dismiss Mr. Donjuan's paternity petition and stayed the paternity action until after the birth of the child.

¶ 6 On July 9, 2009, Mr. Donjuan received a letter from Ms. McDermott's attorney stating that Ms. McDermott had moved to Utah, intended to deliver the baby in Utah, and planned to place the child for adoption under Utah law. In response, Mr. Donjuan filed a paternity petition in Utah and registered his petition with the Utah Office of Vital Records and Statistics. Because Mr. Donjuan did not know the county in which Ms. McDermott resided, he filed his action in Box Elder County. In his paternity petition, Mr. Donjuan requested that he be given custody of the child and stated that he was willing to pay child support. However, he did not file a sworn statement to this effect nor did his petition include any of the other sworn statements required under Utah law.

¶ 7 On July 31, 2009, Ms. McDermott gave birth to a baby girl. On August 3, 2009, she executed her consent to the child's adoption in the Third Judicial District Court in Salt Lake City, Utah. Ms. McDermott represented to the court that she was not married at the time of conception. And she contends that she informed the court that Mr. Donjuan had filed a paternity petition and that a notice of that action had been registered with the Utah Office of Vital Records. But she also noted that Mr. Donjuan had not filed a sworn affidavit in the paternity proceeding.

¶ 8 The adoptive parents served Mr. Donjuan with notice of the adoption proceedings. The notice informed Mr. Donjuan that he had failed to file a sworn affidavit with the court. In an effort to correct his error, Mr. Donjuan filed an amended paternity petition, which he alleges included the sworn statements required by Utah law. Ms. McDermott filed a motion to dismiss the paternity petition for failure to state a claim. On October 8, 2009, Mr. Donjuan filed his objections to the motion to dismiss along with a motion to change venue on the ground that he had filed the petition in the wrong county.

¶ 9 The district court denied Mr. Donjuan's motion for a change of venue, concluding that only a defendant can request a change of venue. The district court granted Ms. McDermott's motion to dismiss Mr. Donjuan's paternity petition because he had not strictly complied with Utah Code section 78B–6–121, which requires a father to file a sworn affidavit before a mother executes her consent to adoption. Mr. Donjuan appealed, and the court of appeals certified this case to us. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b).

## STANDARD OF REVIEW

¶ 10 The applicability of rule 15 of the Utah Rules of Civil Procedure to adoption proceedings "is a question of law which we review for correctness." *See Utah Med. Prods., Inc. v. Searcy*, 958 P.2d 228, 231 (Utah 1998).

## ANALYSIS

¶ 11 Mr. Donjuan raises a number of issues on appeal. First, he contends that rule 15 of the Utah Rules of Civil Procedure allows him to amend his paternity petition to include a sworn affidavit and that his amended petition relates back to his original petition. He therefore argues that the district court erred when it dismissed his amended petition as being untimely. Second, Mr. Donjuan argues that the district court's decision denying him leave to amend his petition violated his due process rights under both the Utah and U.S. Constitutions. Third, he argues that the district court violated the Full Faith and Credit Clause of the U.S. Constitution by refusing to honor the decision of the Georgia court. Fourth, he argues

that the district court did not have subject matter jurisdiction in the paternity proceeding because the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2006), divested it of jurisdiction. Finally, he argues that the district court erred in denying his motion for a change of venue.

¶ 12 We hold that the district court correctly dismissed Mr. Donjuan's amended paternity petition as being untimely because it was not filed until after Ms. McDermott had executed her consent to adoption and the relation back doctrine does not apply. We decline to address Mr. Donjuan's constitutional claims and his claim under the PKPA because he did not preserve them. We also decline to consider whether the district court erred when it denied Mr. Donjuan's request for a change of venue because our holding that Mr. Donjuan's amended petition was untimely renders that issue moot. We therefore affirm the decision of the district court.

## I. THE RELATION BACK DOCTRINE OF RULE 15 DOES NOT ALLOW A FATHER TO AMEND HIS PETITION TO INCLUDE THE AFFIDAVIT REQUIRED BY SECTION 78B–6–121 AFTER THE MOTHER HAS EXECUTED HER CONSENT TO ADOPTION

■ ¶ 13 Mr. Donjuan argues that rule 15 of the Utah Rules of Civil Procedure is applicable to adoption proceedings and allows for a paternity petition to be amended once as a matter of course at any time before a responsive pleading is filed. He further argues that under rule 15(c), he may amend his petition to include the affidavit required by section 78B–6–121 and that the amended petition relates back to the date of the original petition. We disagree.

■ ¶ 14 The Utah Rules of Civil Procedure provide the general rules governing amendment of pleadings. Rule 15(a) permits a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served" or "by leave of [the] court or by written consent of the adverse party." Rule 15(c) adds that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transac-

tion, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The relation back doctrine "allows a plaintiff to cure defects in his or her original complaint despite the intervening running of a statute of limitations." *Russell v. Standard Corp.*, 898 P.2d 263, 265 (Utah 1995).

¶ 15 While the Rules of Civil Procedure contain the general rules governing litigation procedure, section 78B–6–121 provides specific requirements that an unmarried biological father must follow to initiate paternity proceedings. In particular, section 78B–6–121 provides that

[W]ith regard to a child who is six months of age or less at the time the child is placed with adoptive parents, *consent of an unmarried biological father is not required unless, prior to the time the mother executes her consent for adoption* or relinquishes the child for adoption, the unmarried biological father:

(a) initiates proceedings in a district court of Utah to establish paternity under Title 78B, Chapter 15, Utah Uniform Parentage Act;

(b) *files with the court that is presiding over the paternity proceeding a sworn affidavit:*

(i) stating that he is fully able and willing to have full custody of the child;

(ii) setting forth his plans for care of the child; and

(iii) agreeing to a court order of child support and the payment of expenses incurred in connection with the mother's pregnancy and the child's birth;

(c) . . . files notice of the commencement of paternity proceedings . . . with the state registrar of vital statistics . . . ; and

(d) offered to pay and paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy. . . .

UTAH CODE ANN. § 78B–6–121(3) (Supp.2011) (emphases added).

■ ¶ 16 The language of section 78B–6–121(3) is clear and unambiguous. It provides

that the consent of an unmarried biological father is not required unless the father complies with all the requirements set out in this section "prior to the time the mother executes her consent for adoption." *Id.* Moreover, a father's consent is required "only if he … strictly complies with the requirements of Section[] 78B–6–121." *Id.* § 78B–6–120(1)(f). Strict compliance means "fully meeting each test imposed by the statute." *In re Adoption of Connor,* 2007 UT 33, ¶ 18, 158 P.3d 1097; *see also Sanchez v. L.D.S. Soc. Sers.,* 680 P.2d 753, 755 (Utah 1984) ("It is of no constitutional importance that [the unwed father] came close to complying with the statute."). Given the statutory requirement of strict compliance with section 78B–6–121, applying rule 15's relation back doctrine to the affidavit requirement would ignore the legislature's express mandate that the father file an affidavit prior to the execution of the mother's consent. Our general rules of procedure cannot obviate such explicit statutory requirements. We therefore conclude that the relation back doctrine of rule 15 does not apply.

¶ 17 Other courts have reached a similar conclusion, holding that where a statute requires the filing of an affidavit in order to initiate an action, a party may not use rule 15's relation back doctrine to correct the failure to file the required affidavit. *See Scarsella v. Pollak,* 461 Mich. 547, 607 N.W.2d 711, 713 (2000) (per curiam) (holding that where the legislature requires an affidavit to initiate a claim, a plaintiff who does not file an affidavit with his complaint cannot amend his complaint to correct the error after the statute of limitations has expired); *see also Fales v. Jacobs,* 263 Ga.App. 461, 588 S.E.2d 294, 295 (2003) (same); *Thigpen v. Ngo,* 355 N.C. 198, 558 S.E.2d 162, 166 (2002) (same). Here, the legislature specifically required the filing of an affidavit by a father before he would have the right to withhold consent to an adoption. Moreover, the legislature specified that the affidavit must be filed before the mother executes her consent to the adoption. Nothing in the rules of civil procedure can relieve a father of that statutory requirement.

¶ 18 In this case, Ms. McDermott executed her consent to adoption on August 3, 2009. It was at this time that Mr. Donjuan's ability to fulfill *all* of the requirements of section 78B–6–121 expired. Because Mr. Donjuan failed to file the affidavit until August 11, 2009, he did not strictly comply with all of the requirements of section 78B–6–121, and he could not amend his petition to correct his omission after the limitation period had expired. Therefore, the district court correctly dismissed Mr. Donjuan's amended petition as untimely.

## II. MR. DONJUAN WAIVED HIS CONSTITUTIONAL CLAIMS AND HIS CLAIM UNDER THE PKPA

¶ 19 Mr. Donjuan argues that the district court's decision to execute the adoption without his consent violates the U.S. Constitution, the Utah Constitution, and the PKPA. Specifically, he argues that (1) section 78B–6–121 of the Utah Code is unconstitutional under the due process clause of the U.S. and Utah Constitutions because it does not allow a father to amend his petition to include a sworn affidavit after the mother has executed her consent to adoption; (2) section 78B–6–121 of the Utah Code is unconstitutional because "it negates giving Full Faith and Credit to paternity actions initiated outside of the State of Utah;" and (3) the PKPA bars a Utah court from exercising subject matter jurisdiction over an adoption proceeding after a custody proceeding has been initiated in another state. Because Mr. Donjuan did not raise any of these issues in the district court, we hold that they were not properly preserved for appeal.

¶ 20 To properly preserve an issue for appellate review, the issue must be raised in the district court. *O'Dea v. Olea,* 2009 UT 46, ¶ 18, 217 P.3d 704. Additionally, the issue must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority. *Id.* The purpose of the preservation requirement is to put the district court on notice of an issue and provide it with an opportunity to rule on it. *Id.*

¶ 21 Generally, the fact that a party is asserting constitutional claims does not excuse him from complying with the preservation rule. *Id.* But we have recognized "limited exceptions to our general preservation rule." *Patterson v. Patterson,* 2011 UT 68, ¶ 13, 266 P.3d 828. These exceptions permit us to "reach[] matters not raised below under exceptional circumstances or when plain error has occurred." *Id.* (internal quotation marks omitted). We have also reached "unpreserved constitutional arguments where a person's liberty is at stake." *Id.*

¶ 22 The Utah Rules of Appellate Procedure codify the preservation rule. They require that an appellant's brief contain a "citation to the record showing that the issue was preserved in the trial court; or a statement of grounds for seeking review of an issue not preserved." UTAH R.APP. P. 24(a)(5)(A)–(B). Mr. Donjuan's brief does not provide any citation to the record showing where he preserved his federal and state constitutional claims. And our own review of the record reveals that Mr. Donjuan simply did not raise them before the district court. We also note that Mr. Donjuan does not argue that his claims fall within an exception to the general preservation rule. We therefore decline to consider his constitutional claims on appeal.

¶ 23 Mr. Donjuan acknowledges. that he did not raise the PKPA below. But he argues that he is excused from the preservation requirement because the PKPA goes to the district court's subject matter jurisdiction. In support of his position, he points to a provision of the PKPA providing that "[a] court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State." 28 U.S.C. § 1738A(g) (2006). Mr. Donjuan argues that his filing of a paternity petition in Georgia worked to divest the Utah district court of subject matter jurisdiction over the adoption proceeding.

¶ 24 We recently decided this very issue in *J.M.W. v. T.I.Z. (In re Adoption of Baby E.Z.),* 2011 UT 38, 266 P.3d 702. In that case, we determined that "the PKPA, when properly raised, may limit the circumstances under which a state court may exercise its jurisdiction" in a custody proceeding. *Id.* ¶ 35. But we held that the PKPA "does not divest a court of its underlying subject matter jurisdiction." *Id.* Ultimately, we held that the failure of the child's father to raise the PKPA in the district court precluded him from raising it for the first time on appeal. *Id.* ¶ 39. Like the father in *In re Baby E.Z.,* Mr. Donjuan has raised the PKPA for the first time on appeal. We are therefore precluded from considering it. In summary, we hold that Mr. Donjuan's constitutional claims and his claim under the PKPA were not preserved for purposes of appeal, and we therefore decline to address them. We also decline to consider whether the district court erred when it denied Mr. Donjuan's request for a change of venue because our holding that Mr. Donjuan's amended petition was untimely renders that issue moot.

**CONCLUSION**

¶ 25 The district court correctly held that Mr. Donjuan's paternity petition could not be amended to include the affidavit required by Utah Code section 78B–6–121 after Ms. McDermott executed her consent to adoption. We therefore affirm the decision of the district court.

¶ 26 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE concur in Justice PARRISH's opinion.