2000 Utah Ct. App. 285

**Darlene BEARD, Plaintiff and Appellee,**

v.

**K–MART CORPORATION, Defendant and Appellant.**

**No. 20000095–CA.**

Court of Appeals of Utah.

Oct. 19, 2000.

M. David Eckersley, Prince, Yeates & Geldzahler, Salt Lake City, for Appellant.

William R. Rawlings, Draper, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

BILLINGS, Judge:

¶1 Defendant/appellant K–Mart Corporation (K–Mart) appeals the trial court's denial of its motion for a partial directed verdict. We reverse and remand for a new trial.

## FACTS

¶2 On September 15, 1996, plaintiff/appellee Darlene Beard (Beard) was injured in a K–Mart store when a K–Mart employee struck her in the head with his elbow as he attempted to start a lawnmower. As she fell toward the floor, she felt a severe headache, as well as pain in her wrists, knee, and ankle. She visited her doctor the following day, complaining of head, neck, knee, and foot pain, and continued to have severe headaches, a sore neck, aching hands, and leg and foot pain. Beard saw a number of doctors and ultimately underwent a number of surgeries. Beard sued K–Mart for its employee's negligence in striking her. Three surgeries, performed on her neck and wrists by Dr. Robert Peterson, are at issue in this appeal. K–Mart asserts these surgeries are not causally connected to the accident at its store.

¶3 At trial, Beard testified that her neck and wrist problems began when she was struck in the head at K–Mart. In addition, her family physician and her surgeon Dr. Peterson testified "there was a chronologic association for the time of the incident [at K–Mart] to the time of the onset of symptoms." However, Dr. Peterson testified that he could not say to a degree of reasonable medical probability that the accident at K–Mart caused the need for either her neck or wrist surgeries.

¶4 At the close of Beard's case, K–Mart moved for a partial directed verdict, arguing Beard had not presented sufficient evidence

to permit the jury to find that her need for the neck and wrist surgeries was the proximate result of the injuries she had suffered at K–Mart.[1] The trial court denied K–Mart's motion, and the jury awarded Beard $431,290.22 in damages.

## STANDARD OF REVIEW

¶ 5 "When reviewing any challenge to a trial court's denial of a motion for directed verdict, we review ' "the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict." ' " *Mahmood v. Ross*, 1999 UT 104, ¶ 16, 990 P.2d 933 (quoting *White v. Fox*, 665 P.2d 1297, 1300 (Utah 1983) (quoting *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1165 (Utah 1983))). If we conclude Beard did raise a material fact precluding judgment against her as a matter of law, we must affirm the trial court's denial of K–Mart's motion and uphold the jury's verdict. *See id.*

## ANALYSIS

¶ 6 K–Mart argues Beard failed to present expert medical testimony establishing that her need for neck and wrist surgeries was caused by K–Mart's negligence. The essence of K–Mart's argument is that Beard's own testimony and the general testimony of her doctors that she did not suffer neck and wrist complaints before the injury at K–Mart is insufficient as a matter of law to allow the jury to consider whether these surgeries were a result of K–Mart's negligence. K–Mart argues that only expert medical testimony that the need for her surgeries was proximately caused by K–Mart's negligence will suffice. Thus, K–Mart argues the trial court erred in not directing a verdict in its favor and removing this evidence from the jury's consideration.

¶ 7 K–Mart relies on *Denney v. St. Mark's Hospital*, 21 Utah 2d 189, 442 P.2d 944 (1968), for the proposition that "if the expert evidence offered on the issue of medical causation is simply that a particular injury *could* have resulted from a particular accident, but not that it probably did, such testimony is insufficient for submission of the issue to the jury." In *Denney*, the plaintiff had undergone neck surgery and was having x-rays taken of her lumbar spine for unrelated treatment when a medical technician forcefully pushed her neck close to her knees, allegedly causing a feeling like an electric shock in the back of her neck. *See Denney*, 442 P.2d at 944–45. Two days later, she suffered a stroke. *See id.* More than four months later, the plaintiff told her neurologist that her neck had been forced forward during the spinal x-rays. *See id.* The following year, a spinal fusion was performed and a neck nerve severed to relieve pain. *See id.* The plaintiff alleged the x-ray technician's negligence was responsible for her ailments. *See id.* At trial, she testified as to the feeling in her neck when the technician pushed on it, and to continuing pain, numbness, and loss of vision after the incident. *See id.* Additionally, her neurologist testified that the force used by the technician could cause disc problems, but on cross-examination admitted it was a "medical probability" that her ailments were the result of the stroke. *Id.*

¶ 8 The Utah Supreme Court sustained the trial court's directed verdict in favor of the hospital. *See id.* at 946. The court stated:

in those cases which depend upon knowledge of the scientific effect of medicine, the results of surgery, or whether the attending physician exercised the ordinary care, skill and knowledge required of doctors in the community which he serves, must ordinarily be established by the testimony of physicians and surgeons.

. . .

The only facts in the instant case which may be ascertained by the ordinary use of the senses of a lay witness are that the technician moved plaintiff's body, and that the back of her head hurt. No lay witness

---

1. Both parties characterize K–Mart's motion as one for a directed verdict; however, the motion was effectively one requesting a jury instruction excluding consideration of the evidence regarding the neck and wrist surgeries.

can by the ordinary use of his senses say that the complaints of the plaintiff, including the hurting in the back of her head, was caused by this claimed adjustment of her position on the x-ray table.

*Id.* (quoting *Fredrickson v. Maw,* 119 Utah 385, 387, 227 P.2d 772, 774 (1951)). The court concluded that the plaintiff's evidence did not show that her injuries were the result of the negligence of the technician. *See id.* at 947.

¶ 9  K–Mart also relies on *Moore v. Denver & Rio Grande Western Railroad Company,* 4 Utah 2d 255, 292 P.2d 849 (1956). In *Moore,* the plaintiff's doctor testified that "it was possible" that plaintiff's accident had caused a ruptured lumbar disc and nerve pressure. *Id.* at 850. The doctor estimated a five percent permanent disability "based in part on the predictability of exacerbation and remission of pain" over time. *Id.* The defendant moved to strike the doctor's testimony, arguing that "possibilities" were not probative, but the trial court denied the motion. *Id.* An instruction taking consideration of a ruptured disc from the jury on the basis that no competent evidence had been given on the matter was likewise refused by the trial court. *See id.*

¶ 10  On appeal, the defendant argued that the doctor's testimony was "insufficient to provide a question of the existence of an injured disc." *Id.* The Utah Supreme Court recognized that the doctor's testimony regarding the permanency of the plaintiff's disability was "linked to the possibility of a disc injury" and was a significant part of the plaintiff's case. *Id.* The court stated: "Under these circumstances, if the proof of such an injury falls short of that required under our law, then an instruction to that effect should have been given the jury." *Id.* at 850–51. The court noted that under longstanding Utah law, a "plaintiff retains the burden of proving his damages by competent evidence to an extent where the trier of fact could discover that which is *probably* true." *Id.* at 851 (emphasis added). The court agreed with the plaintiff that there was evidence of some injury, but stated:

the jury was allowed to speculate upon the existence of a disc injury, which may be

determinative of the important element of permanency of the injury when no affirmative evidence was offered on this issue. Although the medical testimony indicated that the symptoms showed a nerve irritation, and that such symptoms were consistent with the existence of a disc injury, we cannot discover in the witness' words anything more than their corollary that, under the circumstances a disc injury was not impossible.

*Id.* at 259, 292 P.2d at 851. Because there was a strong likelihood the jury considered the permanency of the injury to have been proven by expert testimony, the court reversed the jury's verdict in favor of the plaintiff, holding that a limiting instruction should have been given. *See id.*

¶ 11  In the instant case, K–Mart argues that although Beard testified her neck and wrist problems began at the time of her injury at K–Mart, her belief that her neck and wrist surgeries were, therefore, the result of that incident cannot overcome the failure of the medical evidence to substantiate that belief.

¶ 12  In contrast, Beard argues she was not required to put on expert medical evidence. Beard claims that under Utah law, expert medical opinions are generally only required in medical malpractice cases. We disagree.

¶ 13  Beard presents cases from other jurisdictions holding that expert medical testimony is not required to submit to the jury questions about the need for medical treatment and expenses. *See, e.g., Jordan v. Smoot,* 191 Ga.App. 74, 380 S.E.2d 714, 715 (1989); *Polaco v. Smith,* 376 So.2d 409, 409–10 (Fla.Ct.App.1979); *Walton v. Gallbraith,* 15 Mich.App. 490, 166 N.W.2d 605, 606 (1969). However, we conclude these cases are factually distinguishable as they involve medical damages within the common experience of a layperson.

¶ 14  In *Smoot,* the plaintiff sued the defendant for injuries she sustained in an automobile collision. *See* 380 S.E.2d at 714. Her case consisted of "her testimony and that of the responding police officer, pictures of her damaged car, and her medical bill." *Id.* The

plaintiff testified that she visited a chiropractor the day of the accident and following the accident and that the chiropractic treatments had given her relief. *See id.* The trial court directed a verdict for the defendant "on the ground that plaintiff had failed to prove a prima facie personal injury case because she had not introduced expert medical testimony" connecting the collision and her injuries. *Id.* The Georgia Court of Appeals reversed, stating "where, as here, there is no significant lapse of time between the injury sustained and the onset of the physical condition for which the injured party seeks compensation, and *the injury sustained is a matter which jurors must be credited with knowing by reason of common knowledge,* expert medical testimony is not required." *Id.* (emphasis added).

¶ 15    Beard also relies on *Walton v. Gallbraith,* 15 Mich.App. 490, 166 N.W.2d 605 (1969). In *Walton,* the plaintiff sued the defendant for neck, back, and shoulder injuries caused by a car accident. *See id.* at 605. At trial, no physician testified for the plaintiff, and the defendant "objected to the admission into evidence of bills for medicine and treatment on the ground that there was no showing that they were causally connected with the ... accident." *Id.* The defendant also requested an instruction to exclude the jury's consideration of the bills. *See id.* The trial court denied both motions, and the jury awarded the plaintiff $3500 in damages. *See id.* On appeal, the defendant argued it was error to introduce plaintiff's medical bills. *See id.* The plaintiff, on the other hand, argued "that a causal connection between the accident and the injury may be shown without expert testimony." *Id.* at 605–06. The court stated:

> A brief review of the function of the jury leads us to the conclusion that plaintiff's position is the correct one. Her testimony emphasizes the facts that there were no previous neck or back pains and that they began the day after the accident.
>
> In a situation such as this, *it should be clear to men of common experience that the cause of the injuries was the accident and no expert was needed to demonstrate this fact.*

*Id.* at 606 (emphasis added). Therefore, the court sustained the jury's verdict in favor of the plaintiff. *See id.*

¶ 16    In this case, the question is not whether the accident at K–Mart caused Beard injury, but rather whether injuries sustained as a result of the accident at K–Mart required the neurological surgeries performed on Beard's neck and wrists. Beard was properly permitted to testify that the accident in the store caused pain and injury. The question as to whether such pain and injury resulted from the blow is within the common knowledge and experience of lay witnesses and could properly be submitted to the jury. What is missing in the evidence, however, is the link between the injuries suffered and the necessity of the surgeries. In Utah, in all but the most obvious cases, testimony of lay witnesses regarding the need for specific medical treatment is inadequate to submit the issue to the jury. *See generally Denney v. St. Mark's Hosp.,* 21 Utah 2d 189, 442 P.2d 944 (1968); *Moore v. Denver & Rio Grande W.R.R. Co.,* 4 Utah 2d 255, 292 P.2d 849 (1956); *Chief Consol. Mining Co. v. Salisbury,* 61 Utah 66, 210 P. 929 (1922). Certainly whether the need for complex neurological surgery was a result of the accident at K–Mart is not within the common experience of laypersons. As stated in *Riggins v. Bechtel Power Corp.,* 44 Wash.App. 244, 722 P.2d 819, 824 (1986):

> The need for positive expert testimony to establish a causal link between the defendants' negligent act and the plaintiff's injury depends upon the nature of the injury. Where the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony that the negligent act probably caused the injury.

*Id.* at 824. "The diagnosis and potential continuance of a disease are medical questions to be established by physicians as expert witnesses and not by lay persons." *Eberhart v. Morris Brown College,* 181 Ga. App. 516, 352 S.E.2d 832, 834 (1987). Thus, we conclude expert testimony on this medical causation issue was required before the issue

of damages arising from these surgeries was submitted to the jury.

¶ 17 Plaintiff alternatively contends that even if she was required to put on expert medical testimony that her need for neck and wrist surgeries was caused by the accident at K–Mart, she introduced adequate expert medical testimony.

¶ 18 Dr. Peterson, the surgeon who performed Beard's neck surgery and both wrist surgeries, testified extensively regarding the causes of Beard's neck pain, wrist pain, and his surgical treatment of them:

A: [T]he question is, you know, what the cause is. *The answer is, basically, I have no way of proving anything.* But the association is that Mrs. Beard came to me and—and, more or less, was a person who was doing well prior to this incident at K–Mart and since that time has been suffering a rather significant problem which could be—you know, which was associated with some significant anatomic compromise in her neck. And from my standpoint, there was a chronologic association from the time of the incident to the time of the onset of the symptoms.

Q: [by Beard's counsel]: What do you mean by chronological association?

A: Happened at the same time. . . . [T]o my knowledge, [Beard] did not have these complaints prior to being hit at K–Mart.

. . .

Q: Can you interpret for us what you found on the MRI? . . .

A: Bone spur.

Q: What causes bone spurs?

A: Well, sort of the same thing that causes a bunion, irritation, disk—an old disk herniation which has receded, abnormal movement, local irritation.

Q: Is that also the aging process as well?

A: Being on a planet with gravity.

. . .

Q: [by K–Mart's counsel]: You performed neck surgery on Darlene Beard because she had marginal osteophytes in her neck, bone spurs.

A: That's essentially correct.

Q: Those were pre-existing to September 15, 1996.

A: That would be my best guess.

Q: In fact, you termed, in your deposition, that as a severe form of degenerative disk disease; is that correct?

A: That's correct.

Q: *All of that was pre-existing long before this K–Mart incident ever happened?*

A: *No argument.*

Q: Do you know how long?

A: Have no idea.

Q: Do you know how they got there?

A: As mentioned previously in testimony, it is essentially concomitant with being on a planet with gravity long enough. But it has to do with local irritation and other potential compromises such as trauma.

Q: *You don't know whether it was trauma, whether it was heredity, whether it was wear and tear, whether it was gravity—as to how those bone spurs got there.*

A: *Absolutely no idea.*

. . .

Q: *And you're not saying to the jury, to a degree of reasonable medical probability, that this incident at K–Mart caused such a condition in her neck; isn't that correct?*

A: *No, I'm not telling the jury that at all.*

Q: *You just don't know, do you?*

A: *No.*

¶ 19 When questioned about the wrist surgery, Dr. Peterson testified:

Q: *Do you have any reason to believe that any other incident, other than the accident of 9–15–96, may have caused this condition?*

A: *No.*

Q: Okay. *Could trauma cause that?*

A: *Trauma—trauma can cause carpal tunnel syndrome. At least certainly aggravate pre-existing condition.*

. . .

Q: Okay. And so, *you're not telling the jury, again, to any degree of reasonable probability that her carpal tunnel was caused by this incident at K–Mart; isn't that correct?*

A: *That's correct.*

¶ 20 We simply cannot say from the record before us that the expert medical testimony was sufficient to allow the jury to consider whether Beard's surgeries were necessitated by K–Mart's negligence and if so what damage she suffered as a result of those surgeries.[2] Without the required expert medical opinion linking the injury to the necessity of the surgery, a jury would simply be speculating about a linkage that is beyond its knowledge and experience. The expert medical testimony merely established a chronological relationship between the accident and her symptoms. No expert medical testimony was received that the neck and wrist surgeries were necessitated by her accident.

Thus, it was error for the trial judge not to grant a directed verdict removing these issues from the jury. Therefore we must reverse and remand for a new trial.

¶ 21 WE CONCUR: GREGORY K. ORME, Judge, and WILLIAM A. THORNE, Judge.

---

2. Counsel for K–Mart conceded and we conclude that Beard will have an opportunity on remand to offer competent expert medical testimony on the issue of whether the accident at K–Mart either caused the need for her neck and wrist surgeries or exacerbated a pre-existing condition which necessitated the surgeries.