2013 UT App 201

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF K.C., A PERSON UNDER
EIGHTEEN YEARS OF AGE.

J.D.C.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20120280-CA
Filed August 15, 2013

Eighth District Juvenile, Vernal Department
The Honorable Larry A. Steele
No. 1057251

Marsha M. Lang and Burke Huber, Attorneys for
Appellant
John E. Swallow and John M. Peterson, Attorneys
for Appellee
Martha Pierce, Guardian ad Litem

JUDGE J. FREDERIC VOROS JR. authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and
MICHELE M. CHRISTIANSEN concurred.

VOROS, Judge:

¶1　J.D.C. (Father) challenges the juvenile court's order adjudicating K.C. (Son) as abused. We affirm.

¶2　On March 9, 2012, the juvenile court found that Father had abused Son. The court placed Son under the protective supervision of the State of Utah and ordered Father to develop a Child and

Family Plan with the Division of Child and Family Services. The juvenile court adjudicated Son as abused after finding that he suffered nonaccidental harm when Father spanked him with his hand and that Son suffered from the threat of harm based on evidence of prior marks and physical bruising. Father challenges the juvenile court's ruling on multiple grounds.

¶3 First, Father contends that the juvenile court abused its discretion by admitting a photograph into evidence that was of higher quality and clarity than the same photograph provided to Father through discovery. "[W]e review a trial court's refusal to impose sanctions, such as a failure to exclude evidence under rule 37 of the Utah Rules of Civil Procedure, for an abuse of discretion." *Glacier Land Co. v. Claudia Klawe & Associates*, 2006 UT App 516, ¶ 13, 154 P.3d 852 (citation and internal quotation marks omitted). However, "an erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful." *Butler v. Naylor*, 1999 UT 85, ¶ 9, 987 P.2d 41 (citation and internal quotation marks omitted). An error is harmful if "absent the error there is a reasonable likelihood of an outcome more favorable to the [appellant]." *State v. Dunn*, 850 P.2d 1201, 1221 (Utah 1993). Here, even if the higher resolution version of the photograph was erroneously admitted, any error was harmless.

¶4 Father asserts that *State v. Knight* controls this issue, shifting to the State the burden to persuade the court that the error did not unfairly prejudice the defense. *See* 734 P.2d 913, 920–21 (Utah 1987). However, *Knight* is distinguishable on multiple grounds. *Knight* involved a criminal case where the prosecution withheld evidence in its possession that was devastating to the defendant's alibi defense; when the defense learned of the evidence on the first day of trial, the trial court denied the defendant "all requested relief," including a continuance. *See id.* at 917–21. The present case does not involve a criminal offense, the difference in quality between the two photographs was not similar to the devastating evidence in *Knight*, the State did not have the higher quality photograph in its possession until one business day before the hearing, and Father was granted a two-month continuance so that his expert witness, Dr. Frasier, could review the higher quality photograph. Thus,

*Knight* does not shift the burden of showing the absence of unfair prejudice to the State in this case.

¶5    Nevertheless, Father argues that the error was harmful because his "entire defense preparation" and his decision to hire two expert witnesses were based on the photograph of lesser quality. Father maintains that the juvenile court's continuance does not cure the expenditure of time and money or the prejudice that resulted from the defense preparations based on the lower quality photograph.

¶6    However, other than conclusory assertions that he was prejudiced, Father does not explain how his hearing preparation was affected. In *Knight*, which Father urges us to follow, the supreme court stated that a continuance "would have mitigated the prejudice [the defendant] suffered" from the prosecutor's withholding of the critically damaging information. *See id.* at 919. Father does not explain how the two-month continuance failed to mitigate any prejudice he claims here. His expert had the opportunity to review the higher quality photograph and testify based on that photograph.

¶7    Furthermore, the juvenile court's final determination rested on substantial evidence in addition to the photograph and Dr. Frasier's testimony, including Son's interview, a separate set of photographs, the testimony of Son's mother (Mother), Father's testimony, and the Child Protective Services investigator's observations when he inspected Son's buttocks. Thus, even if the juvenile court had rejected the higher quality photograph, the court still had ample evidence to find abuse. Moreover, had the higher quality photograph been rejected, the lower quality paper reproduction of the photograph would still have entered the case as evidence. A reduction in the clarity of the photograph does not create a "reasonable likelihood of an outcome more favorable to [Father]." *See Dunn*, 850 P.2d at 1221. Because Father has not shown that the admission of the higher quality photograph was harmful despite the continuance, he is not entitled to reversal of the juvenile court's ruling. *See id.*

¶8 Second, Father contends that "the juvenile court erred in denying [Father's] Rule 59 motion" and subsequent motion to reconsider, arguing that "new evidence had been discovered" undermining "Mother's credibility . . . by actions she had undertaken post-trial that contradicted her testimony at trial." Under the Utah Rules of Civil Procedure, a new trial may be granted if the court finds "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." Utah R. Civ. P. 59(a)(4). Under this rule, "a moving party must establish: (1) the existence of newly discovered evidence which is material and competent; (2) that by due diligence the evidence could not have been discovered and produced before judgment was entered; and (3) that the evidence is not merely cumulative or incidental, but is substantial enough that there is a reasonable likelihood of a different result." *Cabaness v. Thomas*, 2010 UT 23, ¶ 50, 232 P.3d 486 (citation and internal quotation marks omitted). If the juvenile court considers and makes findings on these elements, those findings will be reversed "only if the court has abused its discretion." *In re C.L.*, 2007 UT 51, ¶ 20, 166 P.3d 608.

¶9 Father claims that he was "prejudicially impacted by Mother's false testimony" when she took actions "that contradicted her testimony at trial." According to Father, the apparent contradiction was created when, during the hearing, Mother "indicated that she had not filed any papers to change custody of the children, nor had she met with an attorney in an attempt to change custody of her children," but twelve days after the hearing, she filed a child custody modification petition.

¶10 The juvenile court rejected this argument, finding that the new evidence was immaterial and insubstantial. We agree. During the hearing, Mother testified only that she had not currently met with an attorney and had not filed any papers to modify custody. As the State correctly notes, no testimony was elicited from Mother regarding whether she planned to petition for a change of custody. Mother's filing of the modification petition in no way contradicted her testimony. Additionally, at the hearing, Mother admitted that custody was an issue during the divorce, that she was not content

with the current custody situation, and that she would prefer a different custody arrangement. Thus, the juvenile court was well aware of Mother's potential motive to achieve a change in custody status. Because the "new evidence" does not contradict Mother's testimony and its admission would create no likelihood of a different result, the evidence is immaterial and insubstantial. Father has not shown that the juvenile court abused its discretion in making this finding. Therefore, the trial court correctly denied the rule 59 motion.

¶11    Third, Father contends that "the juvenile court improperly discredited expert testimony that stood uncontroverted at trial" by "not mention[ing]" the testimony of his expert, Dr. Honts, in the court order, which Father contends "presumptively indicat[es] that the juvenile court gave [Dr. Honts's] testimony no weight." Father argues that this testimony "casts strong doubt on whether the 'bruise' occurred as Mother claimed it did" and that "the juvenile court erred in discrediting [Dr.] Honts's testimony about the interviews [with Son] and should have taken [Dr. Honts's] testimony into consideration when making its decision."

¶12    The record demonstrates that the juvenile court, when weighing the evidence, properly took Dr. Honts's assessment of the interview into account. Dr. Honts testified that the interview with Son had no value despite determining that the interview was "generally not suggestive" and was "generally conducted properly" and "followed fairly closely" the standards for forensic interviewing of a child. After weighing all the evidence—including Dr. Honts's testimony—the juvenile court determined that despite Son's interview not being perfect, it nevertheless had value. Thus, the juvenile court did take Dr. Honts's testimony into consideration and accepted much of it, though the court disagreed with Dr. Honts's ultimate conclusion that the interview had no value.

¶13    The juvenile court was not required to accept Dr. Honts's ultimate conclusion. "[U]ltimately, courts are not bound to accept the testimony of an expert and are free to judge the expert testimony as to its credibility and its persuasive influence in light of all of the other evidence in the case." *State v. Maestas*, 2012 UT 46,

¶ 200, 299 P.3d 892 (brackets, citation, and internal quotation marks omitted). In addition to being "free to accept or reject an expert's opinion," the juvenile court, as a trier of fact, "may accord that opinion whatever weight it deems proper." *In re G.Y.*, 962 P.2d 78, 83 (Utah Ct. App. 1998); *see also Tucker v. Tucker*, 910 P.2d 1209, 1216 (Utah 1996) ("[T]he trial court, as trier of fact, [is] entitled to weigh the evidence and reject all or part of any witness's testimony, even that of an expert." (citation omitted)).

¶14 Finally, Father contends that the evidence was "insufficient to determine that a 'bruise' even existed" because no expert testified that the mark on Son's buttock was a bruise. To reverse a juvenile court's decision as to the sufficiency of the evidence, "the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (brackets, citation, and internal quotation marks omitted).

¶15 The State presented lay witness testimony that the mark on Son's buttock was a bruise. Under rule 701 of the Utah Rules of Evidence, testimony of a lay witness is limited to an opinion that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[1] Rule 702, which sets out the standards governing expert testimony, states that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702. "Under this rule, no expert testimony is required if the matter at issue in

---

1. The Utah Rules of Evidence were amended effective December 1, 2011. *See* Utah R. Evid. 701 2011 advisory committee notes. However, these changes were intended to be "stylistic only" and there was no "intent to change any result in any ruling on evidence admissibility." *See id.* Accordingly, we cite the current version of the rules for convenience.

the case is one which . . . is within the knowledge of the average trier of fact, or if the other evidence is such as to present the issues in terms which the jury can be expected to understand." *State v. Payne*, 964 P.2d 327, 332 (Utah Ct. App. 1998) (omission in original) (brackets, citation, and internal quotation marks omitted).

¶16    Accordingly, expert testimony is not required when an issue is "within the common experience of laypersons." *See Beard v. K-Mart Corp.*, 2000 UT App 285, ¶ 16, 12 P.3d 1015. For example, the "need for specific medical treatment" after an alleged negligent act is not within the common experience of laypersons. *Id.* Furthermore, proof of causation requires expert testimony "[w]here the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding." *Id.* (citation and internal quotation marks omitted).

¶17    Here, whether the mark constituted a "bruise" and what caused it did not involve obscure medical factors but was within the common experience of laypersons. *Cf. State v. London*, 2010 WI App 46U, ¶ 7 (per curiam) (holding that there is no need for expert medical testimony to identify the lack of a bruise). Thus, the determination of whether a bruise was present on Son is not one that required expert testimony.[2]

¶18    Based on the testimony and the photographs of Son's buttock, the juvenile court determined that "a mark or bruise" existed, and thus that Son suffered both "threatened harm" and

---

2. Moreover, the juvenile court's conclusion did not rest on the fact that the mark on Son was a bruise but that the mark indicated nonaccidental harm. Father's appellate briefing focuses on the existence of a bruise and, to an extent, its causation. However, the legislature defined "abuse" in part as "nonaccidental harm of a child" or "threatened harm of a child." *See* Utah Code Ann. § 78A-6-105 (LexisNexis 2012). Although "evidence of any bruises, contusions, or abrasions on the child" is relevant to this determination, the ultimate inquiry is nonaccidental harm or threatened harm. *See In re L.P.*, 1999 UT App 157, ¶ 8, 981 P.2d 848.

"nonaccidental harm by the father spanking him with his hand." Despite Dr. Frasier's inability to determine whether the marks were a "bruise," the juvenile court relied on Dr. Frasier's determination that if the marks had been left by a person, "then [they] would be excessive." Moreover, the juvenile court relied on Father's admission that he "does in fact spank the child with an open hand" and Father's testimony that Son was a "believable kid" and "does not lie."

¶19    Our role on appeal is well defined and "we are reluctant to substitute our own judgment for that of the [juvenile] court unless compelled by the law and facts to do so." *See In re Adoption of Connor*, 2007 UT 33, ¶ 17, 158 P.3d 1097. Under the facts of this case, the juvenile court's determination is not "against the clear weight of the evidence" and does not leave us with a "firm and definite conviction that a mistake has been made." *See In re B.R.*, 2007 UT 82, ¶ 12 (citation and internal quotation marks omitted).

¶20    Accordingly, the juvenile court's order is affirmed.[3]

————————

3. To the extent that we have not addressed other points raised by Father on appeal, we have determined that they either are foreclosed by the foregoing analysis or lack merit. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[Appellate courts] need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").