2014 UT App 180

**Jeffrey HANSEN, Plaintiff, Appellant, and Cross-appellee,**

v.

**HARPER EXCAVATING, INC. and Stacy Henderson, Defendants, Appellees, and Cross-appellants.**

**No. 20130163–CA.**

Court of Appeals of Utah.

July 31, 2014.

---

**31.** *See supra* Part I.

April L. Hollingsworth, for Appellant and Cross-appellee.

Ryan B. Hancey, Adam L. Grundvig, Scott S. Bridge, and Joseph C. Rust, for Appellees and Cross-appellants.

Senior Judge RUSSELL W. BENCH authored this Opinion, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.[1]

Opinion

BENCH, Senior Judge:

¶ 1 Jeffrey Hansen appeals from the district court's order granting summary judgment in favor of Harper Excavating, Inc. (Harper) and Stacy Henderson (collectively, Defendants). Hansen argues that the district court erroneously determined that his claims required expert medical testimony regarding the cause of his injuries. We affirm.

## BACKGROUND

¶ 2 In November 2003, Harper hired Hansen. In the first few days of his employment, Hansen submitted application forms to enroll in the health insurance plans offered by Harper. However, in February 2004, Hansen noticed that health insurance premiums were not being deducted from his paychecks, and he so informed Henderson, who was Harper's benefits coordinator. Henderson gave Hansen a second set of enrollment forms for him to complete, which he did in March 2004. At this point, insurance premiums began to be deducted from his paychecks, paying for coverage retroactive to the beginning of February 2004. Premiums continued to be deducted until Hansen quit working for Harper toward the end of April 2004.

¶ 3 Just weeks later, in May 2004, Hansen sought medical attention for breathing problems and discovered that he did not have health insurance. Hansen contacted Harper and was told he had no health insurance coverage. Harper sent Hansen a copy of a letter Harper had received from its insurer in mid-March 2004, declining Hansen's insurance application due to its untimely submission. Harper also sent Hansen a check to reimburse him for the amounts deducted from his paychecks as health insurance premiums.

¶ 4 Shortly thereafter, in early June 2004, Hansen went to the hospital seeking treatment for back pain. To help diagnose the back problem, the hospital recommended Hansen get an MRI, which he could not afford without insurance, and the hospital refused to admit him without insurance. But the pain continued over the next few weeks and eventually caused Hansen to be taken via ambulance to the hospital. The hospital admitted Hansen and performed an MRI, which led to the diagnosis of a staph infection in his spine. Hansen remained in the hospital for several days and stayed in a convalescent center for several weeks thereafter, but was still left with permanent back injuries after his recovery.

¶ 5 In November 2005, Hansen filed a lawsuit in federal court against Harper under the Employee Retirement Income Security Act. Hansen was successful in that lawsuit, and Harper was required to pay Hansen's medical bills. In the course of that litigation,

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

Hansen discovered new information underlying his insurance situation, which prompted him to bring the negligence claims of this case in state court. Also during the pendency of the federal case, Hansen lost his sight in one eye, which he alleges was due to his inability to pay for laser surgery that would have treated his glaucoma and saved his sight. Hansen further claims that his mental health has deteriorated due to his lack of insurance and the problems flowing from it, and that he now suffers from chronic depression.

¶ 6 Defendants first moved for summary judgment on res judicata and judicial estoppel grounds, and the district court denied their motion. Later, Defendants moved for summary judgment on the ground that the discovery deadline had passed for identifying expert witnesses and Hansen had failed to identify any expert witnesses to show causation. Hansen argued that expert testimony was not necessary, pointing out that several of his treating physicians had been identified as fact witnesses during discovery. Hansen alternatively requested leave to designate expert witnesses should the district court determine that such witnesses were necessary to prove causation. The district court determined that expert testimony was necessary under the facts of this case, denied Hansen's request for leave to designate expert witnesses, and granted summary judgment in favor of Defendants. Hansen appeals the entry of summary judgment.[2]

## ISSUE AND STANDARD OF REVIEW

¶ 7 Hansen challenges the district court's grant of summary judgment in favor of Defendants. " 'Because summary judgment is a conclusion of law, we give no deference to the trial court's conclusions of law but review those conclusions for correctness.' " *Kent v. Pioneer Valley Hosp.*, 930 P.2d 904, 906 (Utah Ct.App.1997) (quoting *Dalley v. Utah Valley Reg'l Med. Ctr.*, 791 P.2d 193, 195 (Utah 1990)).

2. On appeal Hansen presents no argument contesting the district court's denial of his request

## ANALYSIS

### I. The Summary Judgment Standard

¶ 8 Hansen initially argues that summary judgment was inappropriate because Defendants "fail[ed] to provide facts to suggest their conduct did not cause Mr. Hansen's injuries." However, such a showing by Defendants is not necessary. Because Hansen would bear the burden of proof at trial, Defendants "may satisfy [their] burden on summary judgment by showing, by reference to 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that there is no genuine issue of material fact." *Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 (quoting Utah R. Civ. P. 56(c)). "Upon such a showing, *whether or not supported by additional affirmative factual evidence*, the burden then shifts to [Hansen], who ... 'must set forth specific facts showing that there is a genuine issue for trial.' " *See id.* (emphasis added) (quoting Utah R. Civ. P. 56(e)).

¶ 9 Hansen's complaint alleged that due to Defendants' misconduct he was unable to obtain necessary medical care, which caused him damage to his back, his sight, and his mental health. "Causation is a highly fact-sensitive element of any cause of action.... To establish causation, plaintiffs must persuade a fact finder that their injury was a natural result of the defendant's breach." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1292 (Utah Ct.App.1996). " '[T]he causal connection between the alleged negligent act and the injury is never presumed and ... this is a matter the plaintiff is always required to prove affirmatively.' " *Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 21, 176 P.3d 446 (alteration and omission in original) (quoting *Jackson v. Colston*, 116 Utah 295, 209 P.2d 566, 568 (1949)). " '[T]he trial court may rule as a matter of law on this issue ... if ... there is no evidence to establish a causal connection, thus leaving causation to jury speculation.' " *Id.* (omissions in original) (quoting *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 601 (Utah

for leave to designate expert witnesses.

Ct.App.1995)). Defendants' motion for summary judgment referenced the relevant pleadings, depositions, and answers to interrogatories in the record to show that expert testimony is required to establish causation in this case and that Hansen has not provided this evidence. Therefore, Defendants have met their summary judgment burden.

## II. The Necessity of Expert Testimony

■ ¶ 10 Hansen argues that expert testimony is not necessary to prove causation here.

> In Utah, "[t]he need for positive expert testimony to establish a causal link between the defendants' negligent act and the plaintiff's injury depends on the nature of the injury." Thus, "[w]here the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding, there must be expert testimony that the negligent act probably caused the injury." ... It is only in "the most obvious cases" that a plaintiff may be excepted from the requirement of using expert testimony to prove causation.

*Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 22, 176 P.3d 446 (alterations in original) (quoting *Beard v. K–Mart Corp.*, 2000 UT App 285, ¶ 16, 12 P.3d 1015).

■ ¶ 11 Hansen asserts that "causation is obvious when a party causes another to be unable to adequately treat his medical conditions." However, there must be evidence indicating that the inability to get treatment resulted in the injuries of which Hansen complains. We are not convinced that this connection is within the ordinary lay person's knowledge and can be made without expert testimony. Simply because certain treatment had been recommended does not establish that such treatment would have been successful in avoiding, or even mitigating, the injuries that arose without treatment. Thus, Hansen needed to present evidence from which the jury could find, without speculation, that he would have avoided his injuries had he received the recommended treatment.

¶ 12 For example, Hansen claims that the actions of Defendants led to his permanently damaged back because without insurance he was unable to get an MRI or be admitted to the hospital when he sought medical attention in early June 2004. When Hansen ultimately did get an MRI and was admitted to the hospital later that month after returning to the hospital with more extreme back pain, he was diagnosed with a staph infection in his spine and began recovery from this infection. But it is not within an ordinary lay person's knowledge as to whether the infection was present when Hansen first started feeling back pain, whether an MRI at that early date would have led to earlier diagnosis, whether the type of injury sustained is likely a result of the spinal infection, or whether earlier commencement of treatment would likely have prevented any portion of the damages to Hansen's back.

■ ¶ 13 Hansen similarly claims that Defendants' actions ultimately resulted in his blindness in one eye. Hansen suffered from glaucoma and argues that due to his lack of insurance he was unable to get the recommended surgical procedure on his eye.[3] However, it is not within an ordinary lay person's knowledge as to the specifics or severity of glaucoma, the procedure recommended here, or the likelihood of whether, considering the normal progression of the disease prior to Defendants' actions, Hansen would have been able to maintain his sight in his eye had the procedure been done at the time it was recommended.

■ ¶ 14 Hansen likewise claims that the lack of insurance caused damages resulting from depression. We again are not convinced that an ordinary lay person would have knowledge sufficient to assess the cause of this injury. Depression is a complex ailment that could conceivably stem from any one of or a combination of an innumerable set of factors (including other challenges faced by Hansen). An ordinary lay person would not know which factor or factors likely caused Hansen's depression and would there-

---

**3.** Hansen also states that due to his lack of insurance he was unable to afford the eye drops prescribed for his glaucoma. But he also states that this is "beside the point" and that his theory of liability is based on the inability to obtain the recommended surgery.

fore be unable to determine, without speculation, whether Hansen would have avoided his depression had he been covered by a health insurance policy.

¶ 15 Thus, because the connection between Defendants' actions and Hansen's injuries is not within the knowledge of an ordinary lay person, Hansen needed to present expert testimony to establish causation. Because he failed to designate any witnesses to provide such testimony, judgment in favor of Defendants on his negligence claims was appropriate as a matter of law.

### III. Testimony of Treating Physicians

¶ 16 Hansen also argues that even if expert testimony is required in this case, he may show causation through those physicians he designated as fact witnesses. The applicable version of rule 26 of the Utah Rules of Civil Procedure[4] discusses different types of disclosures relating to witnesses. *See* Utah R. Civ. P. 26(a)(1)(A), (a)(3)(A), (a)(3)(B) (2011). Subsection (a)(1) is titled "Initial disclosures" and requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information supporting [a party's] claims or defenses." *Id.* R. 26(a)(1)(A). Subsection (a)(3) is titled "Disclosure of expert testimony" and requires further disclosures. *Id.* R. 26(a)(3). Subsection (a)(3)(A) states that "[a] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under [r]ules 702, 703, or 705 of the Utah Rules of Evidence." *Id.* R. 26(a)(3)(A).[5] And subsection (a)(3)(B) provides that generally "this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony,* be accompanied by a written report prepared and signed by the witness or party." *Id.* R. 26(a)(3)(B) (emphasis added). "Thus, rule 26(a)(3) contemplates that all persons who may provide opinion testimony based on experience or training will be identified, but that only retained or specially employed experts are required to also provide an expert report." *Pete v. Youngblood,* 2006 UT App 303, ¶ 12, 141 P.3d 629.

¶ 17 Hansen is correct in his assertion that treating physicians do not fall into the category of "retained or specially employed" expert witnesses and that expert reports as mentioned in subsection (a)(3)(B) are therefore not required for treating physicians who will testify as experts. *See Drew v. Lee,* 2011 UT 15, ¶¶ 23–25, 250 P.3d 48. Nonetheless, treating physicians must still be disclosed as expert witnesses under subsection (a)(3)(A) if they will "provide opinion testimony based on [their] experience or training." *Pete,* 2006 UT App 303, ¶ 12, 141 P.3d 629; *see also* Utah R. Civ. P. 26(a)(3)(A) (2011). This court has previously held that naming a treating physician as a fact witness does not satisfy the requirements of subsection (a)(3)(A): "'[T]reating physicians and treating nurses must be designated as experts if they are to provide expert testimony.'" *Pete,* 2006 UT App 303, ¶ 17, 141 P.3d 629 (quoting *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 758 (7th Cir.2004)). *See generally id.* ("Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to

4. Rule 26 was amended in 2011, but these amendments are only applicable to cases filed on or after November 1, 2011. *See* Utah R. Civ. P. 1 advisory comm. note ("Due to the significant changes in the discovery rules, the Supreme Court order adopting the 2011 amendments makes them effective only as to cases filed on or after the effective date, November 1, 2011, unless otherwise agreed to by the parties or ordered by the court."). We therefore cite the version in effect prior to November 2011.

5. Rule 702 provides,

[A] witness who is qualified as an expert by knowledge, skill, experience, training, or edu-

cation may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Utah R. Evid. 702(a). This is in contrast to opinion testimony allowed by ordinary witnesses, which is specifically defined as those opinions "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* R. 701(c). The opinion testimony Hansen suggests he would elicit from his treating physicians is based on specialized knowledge and would fall within the scope of rule 702.

properly prepare for trial.... The failure to disclose experts prejudiced [defendant] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony ..., retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report." (alteration and omissions in original) (emphasis, citation, and internal quotation marks omitted)).[6] Thus, Hansen's disclosure of his intent to call treating physicians as fact witnesses is not sufficient to allow the admission of their expert opinions, and Hansen remains without any witnesses designated to give expert testimony as to causation.

## CONCLUSION

¶18 We determine that Hansen's negligence claims required expert testimony supporting the causation element, that Hansen did not designate any witnesses to provide such testimony, and that the district court therefore did not err in granting summary judgment in favor of Defendants due to Hansen's failure. We affirm.[7]

---

6. The 2011 amendments to rule 26 "curb[ ] excessive expert discovery," *see* Utah R. Civ. P. 1 advisory comm. note, and give more flexibility to how a party must provide notice that treating physicians will provide expert testimony, *see id.* R. 26 advisory comm. notes ("If a party has disclosed possible opinion testimony in its Rule 26(a)(1)(A)(ii) disclosures, that party is not required to prepare a separate [expert witness] disclosure for the witness."). But even under the amended version, a party must disclose the planned use of treating physicians to give expert testimony:

> If a party intends to present evidence at trial under Rule 702 of the Utah Rules of Evidence from any person other than an expert witness who is retained or specially employed to provide testimony in the case or a person whose duties as an employee of the party regularly involve giving expert testimony, that party

must serve on the other parties a written summary of the facts and opinions to which the witness is expected to testify in accordance with the deadlines [for expert disclosure].

*Id.* R. 26(a)(4)(E); *see also id.* R. 26 advisory comm. notes ("[A] party should receive advance notice if their opponent will solicit expert opinions from a particular witness so they can plan their case accordingly.").

7. Because we affirm the grant of summary judgment in favor of Defendants based on Hansen's failure to establish a prima facie case of negligence, we need not address Defendants' cross-appeal, which argued that the district court erred in refusing to grant an alternate summary judgment motion based on res judicata and judicial estoppel grounds.